Lawrence LANE and Carl Neely,
Plaintiffs–Appellees,

v.

JOHN DEERE COMPANY,
Defendants–Appellants.

Supreme Court of Tennessee,
at Knoxville.

Feb. 13, 1989.

Rehearing Denied March 20, 1989.

Jerry Lee Burgess, Ronald Thurman, Ernest C. Onks, Cookeville, for plaintiffs-appellees.

Raymond E. Lacy, E. Brian Sellers, Lacy & Winchester, Knoxville, for defendants-appellants.

## OPINION

DROWOTA, Chief Justice.

Plaintiffs-appellees, Lawrence Lane and Carl Neely, sued defendant-appellant, John Deere Company and the local dealer, Clifford Pugh, d/b/a Tri County Equipment Company, for the wrongful acceleration of a debt and repossession of farm equipment purchased under installment sales contracts. The case was submitted to the jury with instructions on both breach of contract and conversion and resulted in a general verdict against John Deere in the amount of forty-five thousand dollars.[1] The Court of Appeals affirmed, and we granted permission to appeal primarily to consider the scope of good faith obligation imposed by T.C.A. § 47–1–208 on contract clauses that permit a party to accelerate a debt which he deems insecure.

Plaintiffs in this case engaged in a joint operation farming primarily parcels of

---

1. No issues have been raised with respect to the separate judgment against the dealer.

rented land totaling fifteen hundred acres. Between 1977 and 1979 they purchased from the local John Deere dealer various items of farm equipment under twelve separate contracts. Each contract was thereafter assigned to Deere. Installment payments on the contracts fell due in December 1979 and January 1980, when after a poor crop year, Plaintiffs were in default for non-payment on all the contracts in the total amount of approximately $54,000.

With the knowledge and cooperation of Deere, the local dealer arranged a $25,000 loan to Plaintiffs from Production Credit Association, the entire proceeds of which were endorsed to Deere on March 31, 1980, in partial payment of the arrearage. Deere accepted this amount and agreed to postpone further action until July 1, 1980. Significantly, Deere reserved the right to apply the proceeds in any manner it desired. The parties anticipated the remaining amount due would be paid from an FHA loan Plaintiffs were seeking.

Thereafter, Deere applied the $25,000 payment in a manner that, according to the testimony of Deere's credit manager, made the six most recent contracts current in payment and extended payment on the others until July 1, 1980. Although Deere continues to insist to the contrary, this application is shown uniformly in its own internal memoranda, in statements of accounts forwarded to the local dealer and shown to the Plaintiffs, in its credit manager's testimony, and in the fact that deferral agreements were prepared for only six of the contracts.[2]

On July 1, 1980, when plaintiffs failed to pay the outstanding $29,000, the six extended contracts were admittedly in default for non-payment. Deere's new credit manager instructed the local dealer to repossess all the equipment covered by all twelve contracts, a service he was obliged to perform under his dealer financing agreement with Deere. The proof is strong that the dealer, having previously assured Plaintiffs that six contracts were

current and their possession of the subject equipment was secure until the next annual payment date, persuaded them to surrender all the equipment by promising to arrange a sale favorable to them. That is, he promised to sell the items in which they had the most equity (not necessarily those covered by the six contracts in default for non-payment) and to return the other half to them.

The repossession took place on July 10, and by letter dated July 29 Deere announced its intention to dispose of all the equipment. Thereafter, the twelve contracts were reassigned to the local dealer, and all the equipment was sold later in the year. The dealer testified these sales resulted in no deficiency and no surplus.

The disputed contracts included the following clause:

> This note shall be in default if I (we) shall fail to pay any installment when due or ... if for any reason the holder of this note deems the debt or security unsafe, and in any such event the holder may immediately and without notice declare the entire balance of this note due and payable.

Deere insists that even if the six disputed contracts were not in default for non-payment or other affirmative acts within Plaintiffs' control, it was entitled to accelerate the debts under this "insecurity clause."

The enforceability of this contract clause is governed by several sections of the Uniform Commercial Code:

> A term providing that one (1) party or his successor in interest may accelerate payment ... "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have the power to do so only if he in good faith believes that the prospect of payment ... is impaired. The burden of establishing lack of good faith is on the party against whom the power is exercised. T.C.A. § 47-1-208.

---

**2.** Statements signed by Plaintiffs in their application for the FHA loan do not show the contrary. Although each statement notes "deferred to July 1, 1980", each statement includes both accounts shown to be current and accounts shown to be outstanding. It is more than reasonable to infer the deferral refers only to the latter.

Every contract or duty within chapters 1 through 9 of this title imposes an obligation of good faith in its performance or enforcement. T.C.A. § 47–1–203.

"Good faith" means honesty in fact in the conduct or transaction concerned. T.C.A. § 47–1–201(19).

This Court has not previously addressed the good faith obligation imposed by section 1–208 on the acceleration of a debt that is not in default for the non-performance of some contractual duty. Good faith is defined in section 1–201(19) as "honesty in fact." Comments to the official text of the Uniform Commercial Code further make plain that acceleration under section 1–208 may not be exercised at the "whim or caprice" of a party, Comment on T.C.A. § 47–1–208, and that the good faith standard is intended to curb the "possibility of abuse," Comment on T.C.A. § 47–3–109.

Early litigation involving section 1–208 dealt with the first of these elements. The issue most often presented was the extent to which the basis of the belief the debt was insecure must be reliable, or rational, or reasonable, or correct. Widely varying results were reached, but it is now well settled at least that a debtor's proof that the prospect of payment was not, in fact, impaired will not alone prevent enforcement of an insecurity clause if the creditor had reasonable grounds to believe that it was. In the absence of material evidence of a lack of good faith, a party's reasonable, honest belief will suffice.

Deere has insisted that it acted under a reservation of right in the deferral agreement, T.C.A. § 47–1–207, that the dealer's oral representations to Plaintiffs are not enforceable, T.C.A. § 47–1–107, and that any means of repossession without a breach of the peace was within their privilege, T.C.A. § 47–9–503.

Assuming these assertions to be correct, they beg the question when an issue of good faith is raised. The good faith requirement is independent of particular privileges and duties that arise under the code or under the contracts. It imposes "an honest intention to abstain from taking any unconscientious advantage of another, even through the forms and technicalities of the law." Summers, "Good Faith in General Contract Law and the Sales Provisions of the Commercial Code," 54 Va.L.Rev. 196, 198 (1968) (quoting *Warfield Natural Gas Co. v. Allen*, 248 Ky. 646, 655, 59 S.W.2d 534, 538 (1933)).

Of course a party's assertion that he acted out of a good faith belief is not the only relevant evidence. *Ginn v. C & S National Bank*, 145 Ga.App. 175, 243 S.E. 2d 528, 530 (1978). Numerous factors have been deemed material: his knowledge of the insecure circumstances at the time of contracting, *e.g., Clayton v. Crossroads Equipment Co.*, 655 P.2d 1125 (Utah 1982); his knowledge of facts that contradict the negative information acquired, *e.g., Eglin Federal Credit Union v. Curfman*, 386 So.2d 860 (Fla.App.1980); the nature and value of the collateral, *e.g., Jack M. Finley, Inc. v. Longview Bank & Trust*, 705 S.W. 2d 206 (Tex.App.1985); his position—whether secured or unsecured, *e.g., McKay v. Farmers & Stockmens Bank of Clayton*, 92 N.M. 181, 585 P.2d 325 (1978); any deceit or outrageous conduct in the course of the whole transaction, including repossession, *e.g., Farmers & Merchant Bank of Centre v. Hancock*, 506 So.2d 305 (Ala. 1987); *Mitchell v. Ford Motor Credit Co.*, 688 P.2d 42 (Okla.1984); an abrupt departure from an established course of dealing, *e.g., Reid v. Key Bank of Southern Maine*, 821 F.2d 9 (1st Cir.1987); such circumstances relating only to the creditor as audits or personnel conflicts, *e.g., Farmers & Merchant Bank of Centre, supra;* erroneous assertion of default on some other ground, *e.g., Kupka v. Morey*, 541 P.2d 740 (Alaska 1975); the course of dealing between the parties, *e.g., Farmers & Merchant Bank of Centre, supra; Reid v. Key Bank, supra;* any oppressive use of his superior position, *e.g., Reid v. Key Bank, supra; Libby v. Twombley*, 213 Mont. 66, 689 P.2d 1226 (1984); any commercial advantage unrelated to the security of the debt, *e.g., State National Bank of El Paso v. Farah Mfg.*, 678 S.W.2d 661 (Tex.App.1984); gross negligence in record keeping, *e.g., Mitchell v. Ford Motor Credit, supra; see also McConnico v. Third National Bank*, 499

S.W.2d 874, 881 (Tenn.1973); prior assurances causing the other party to change position, *e.g., Libby v. Twombley, supra*; and a creditor's own conduct that contributes to the insecurity, *e.g., Kupka v. Morey, supra.*

Recent decisions rendered by the courts of other states illustrate the foregoing summary.

In *Mitchell v. Ford Motor Credit Co.*, 688 P.2d 42 (Okla.1984), a jury verdict for the debtor was affirmed when repossession was undertaken in an erroneous belief that the debtor was in default for non-payment. Two tractors had been purchased under separate contracts. The creditor accepted late payment on one, and unaware that payment had already been made on the other, he attempted to repossess it. When this second tractor could not be located, he simply directed his agents to repossess the first one. The court considered the mistake about the status of the contract, the egregious behavior in repossession, and the utter lack of coordination in the office to be sufficient evidence of lack of good faith. Plainly, the "insecurity clause" was an after-the-fact defense, not an honest-in-fact motivation.

In *Farmers & Merchant Bank of Centre v. Hancock*, 506 So.2d 305 (Ala.1987), the court examined the whole course of dealing from the debtor's impeccable 47–year credit record with the lender to the lender's sale of the collateral to its own officers for a much reduced price.

The bank held 180–day promissory notes secured by several trucks. For three years the notes had been rolled over at current rates upon timely payment of the interest. After a bank audit and dismissal of the officer who handled this customer's accounts, the bank called the notes due before maturity. The customer delivered the trucks and signed foreclosure releases on the promise he would not be sued. After a private sale, the bank sued for a deficiency, and the customer counterclaimed.

In upholding a jury verdict for the customer, the court found to be material the evidence that the notice to accelerate the debt related more to the lender's internal affairs than to the financial condition of the customer, the unexplained and abrupt departure from its course of dealing on this transaction, the misrepresentation during the repossession and foreclosure, and the questionable sale. Of the customer's financial condition, the court remarked that it had not significantly changed since the original loan.

*Clayton v. Crossroads Equipment Co.*, 655 P.2d 1125 (Utah 1982), also involved John Deere as creditor and two contracts with clauses identical to the one in the present case. Deere accepted assignment of an installment sales contract in 1977 and obtained credit information about the customer. The following year Deere rejected a second contract, on a second piece of equipment, apparently because the down payment was insufficient and because during a credit check for this transaction, Deere discovered in its files negative credit information about the plaintiff. At a convenient time, Deere instructed the dealer to repossess the equipment purchased under the first contract. The court held that the good faith obligation was not met by reliance on information in possession of the creditor at the time of contracting.

In *First National Bank in Libby v. Twombly*, 213 Mont. 66, 689 P.2d 1226 (1984), defendant bank held a promissory note secured by new restaurant equipment. Before the note matured, the customer closed his business and negotiated with a bank officer to convert the note to an installment loan, and he expended available funds in reliance on this agreement. Another officer refused to honor the agreement, accelerated the note under a claim of insecurity, and set off funds from the customer's checking account. Although the customer's financial circumstances had plainly changed, the bank's behavior was held to be material evidence of a lack of good faith, and a verdict for the customer was affirmed.

Similar results have been reached in several other jurisdictions. *See, e.g., Kupka v. Morey*, 541 P.2d 740 (Alaska 1975); *Richards Engineers, Inc. v. Spanel*, 745 P.2d 1031 (Colo.App.1987); *Ginn v. C. & S. National Bank*, 145 Ga.App. 175, 243 S.E.2d

528 (1978); *Black v. Peoples Bank & Trust Co.*, 437 So.2d 26 (Miss.1983); *McKay v. Farmers & Stockmens Bank*, 92 N.M. 181, 585 P.2d 325 (App.1978); *State National Bank of El Paso v. Farah Mfg.*, 678 S.W. 2d 661 (Tex.App.1984).

Some courts have been willing to weigh evidence of the debtor's financial condition against that of bad faith dealing and have concluded that unequivocal proof the debt was impaired and the creditor had that knowledge would defeat any inference of lack of good faith. *See First Bank of Savannah v. Kilpatrick–Smith Const. Co.*, 153 Ga.App. 112, 264 S.E.2d 576 (1980); *Van Bibber v. Norris*, 275 Ind. 555, 419 N.E.2d 115 (1981); *Farmers Cooperative Elevator, Inc. v. State Bank of Duncombe, Iowa*, 236 N.W.2d 674 (Iowa 1975).

In the case before us Deere relies on several circumstances that impaired Plaintiffs' ability to meet its obligations, chief of which was their failure to obtain the FHA loan. Nonetheless, there is proof from which the jury could infer that this event was not, in fact, the cause of the decision to accelerate payment on the current contracts.

Review of this case is governed by Rule 13(d), T.R.A.P., which limits this Court to an inquiry whether the record contains any material evidence to support the jury verdict. We conclude that the record contains sufficient material evidence as to liability, but the proof is inadequate as to damages.

■ We construe sections 1–203 and 1–208 to require that in the acceleration of a debt pursuant to an insecurity clause, the party exercising that option must act out of an honest belief the other party's ability to perform has deteriorated since the time of contracting and must not use it as an instrument of abuse. Any evidence that the belief was not rational or that the party accelerating the debt took unconscientious advantage of the other or resorted to this severe remedy for other reasons is material. In the record before us there is ample evidence that Deere took advantage of its superior position in not allowing Plaintiffs to apply the partial payment to preserve the most useful equipment or to protect

their equity; that Deere felt entitled to ignore the application of those funds it had made at its own option; that through its dealer Deere deceived Plaintiffs about the status of their accounts and the disposition of the equipment after repossession; and that the insecurity clause is an after-the-fact justification for a wrongful declaration of default for non-payment.

This construction comports with decisions from other jurisdictions already noted. We do not anticipate, as Defendant predicts, that such a construction will deter creditors from negotiating with debtors in difficulty. It does no more than to require fair dealing, honest information, and minimal attention to the records of the transaction.

■ Although we affirm the judgment as it pertains to Deere's liability, we find the proof of damages so inadequate as to require a remand. There is some testimony estimating the total value of *all* the subject equipment at the time of the first default, and proof of the outstanding balance on each item of equipment at that time and at repossession. But clearly the award cannot be predicated on the values of equipment covered by the six contracts that were admittedly in default and further, the measure of damages for conversion requires evidence of the value of the property at the time of the wrongful conduct. Where such evidence is wholly lacking we cannot say it has been shown with a reasonable degree of certainty. *See Redbud Cooperative Corp. v. Clayton*, 700 S.W.2d 551 (Tenn.App.1985). We are of the opinion that the verdict was based upon speculation and conjecture or upon inadequate proof of damages. *See Maple Manor Hotel, Inc. v. Metropolitan Gov't*, 543 S.W.2d 593 (Tenn.App.1975).

Inasmuch as the trial court approved the verdict against Deere for wrongful exercise of the acceleration clause, the plaintiffs are also entitled to show the monetary measure of any damages resulting from Deere's breach of contract.

The judgment of the trial court is accordingly reversed and this cause remanded for

a new trial on the issue of damages and for any further proceedings which may be necessary. Costs on appeal are taxed equally to the parties. The trial judge will adjudge all other costs.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.