VIRGINIA A. PARKER,      )
                                        )
        Plaintiff/Appellant,      )
                                        )     Appeal No.
v.                                )     M2000-00456-COA-R3-CV
                                        )
FIRST AMERICAN CORPORATION,  )     Sumner Circuit
                                        )     No. 16844-C
        Defendant/Appellee.     )

**FILED**

**March 6, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY

AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS GOODALL, JUDGE

WILLIAM L. MOORE, JR.
Rogers & Moore
119 Public Square
Gallatin, Tennessee 37066
     ATTORNEY FOR PLAINTIFF/APPELLANT


WENDY LYNNE LONGMIRE
200 Fourth Avenue North
Noel Place, Third Floor
P. O. Box 198985
Nashville, Tennessee 37219-8985
     ATTORNEY FOR DEFENDANT/APPELLEE

REVERSED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

This appeal involves the jury's assessment of damages arising out of a premises liability case. Finding the plaintiff to be 49% at fault and the defendant to be 51% at fault, the jury awarded to the plaintiff 51% of the damages that it had assessed. On appeal, the plaintiff argues that the jury's damage award is not

supported by material evidence in that it does not include damages for pain, suffering and loss of enjoyment of life. We agree with the plaintiff. Therefore, we reverse the jury's award as to damages and remand this case for a new trial only on the issue of damages.

## I. Facts

In May of 1996, Virginia Parker fell and injured her ankle as she was entering a branch of First American Bank in Nashville. Ms. Parker, the plaintiff here, brought suit against the defendant bank charging the bank with negligence in the creation of a dangerous condition on its premises. During the jury trial that followed, there was proof of liability as well as of the expenses incurred and pain suffered by Ms. Parker due to her injury.

Uncontroverted proof was presented with regard to the effect of Ms. Parker's injury. Ms. Parker testified that she was in severe pain at the time of her fall. She was initially treated by the placement of a cast on her ankle which remained for six weeks. During this period, she was confined to her home where she could do little but eat and watch television. After the cast was removed, Ms. Parker did not significantly improve. It was Ms. Parker's testimony that between June of 1996 and May of 1997, she had difficulty performing daily tasks such as working, performing household duties, climbing stairs and engaging in recreational activities.

In the summer of 1997, Ms. Parker attended physical therapy but her ankle remained painful and swollen. Finally, in October of 1997, under the care of Dr. Allen Henson, Ms. Parker underwent surgery to remove a broken bone in her ankle which had not yet healed. Following surgery, she testified that she again experienced pain and that she was limited in her activities for an additional four weeks. However, the surgery remedied her problem and, eventually, she was able to return to her active lifestyle. As of the date of trial, she testified that her ankle was still "tender to touch and [there was still] pain that shoots up [her] leg." Ms. Parker's testimony with regard to her pain and limited ability to function was corroborated by the testimony of her husband as well as that of Dr. Henson.

A list of Ms. Parker's medical expenses was entered at trial as exhibit 13. This list reflected that the sum total of her expenses as of November 10, 1997 was $7890.90. Ms. Parker testified that, other than a $212 charge for the removal of her cast, this list was a complete and accurate account of her expenses. The $7890.90 total in exhibit 13 included $2340 for Dr. Henson's

treatment of Ms. Parker. However, in his deposition, Dr. Henson testified that $2575 was the total amount that he billed Ms. Parker. Dr. Henson testified that $2575 was a necessary and reasonable charge for his services.

The case was tried before a jury on April 27 and 28 of 1998. In its initial jury charge, the trial judge did instruct the jury that "[t]he amount of such award shall include . . . pain and suffering. Reasonable compensation for any physical pain and suffering . . . suffered by the Plaintiff, Mrs. Parker, of which her injury was the legal cause. . . . [and n]ext, the loss of enjoyment of life. Reasonable compensation for loss of enjoyment of life suffered by Mrs. Parker and of which her injury was the legal cause." Following the jury charge and during the course of deliberation, the jury returned to the court room with two questions for the trial judge: (1) "Would you please advise the jury again on how the percentage of fault effects [sic] any amount of damages award?" and (2) "Can the jury award medical expenses only?" The court responded as follows:

> THE COURT: Let me try to help you. It says, would you please advise the jury again on how the percentages of fault affects any amount of damages awarded.
> In the comparative fault, I'll read you part of the charge I've given to you before not for undue emphasis, but to explain your question that you propounded to me.
> You must also determine the total amount of damages sustained by any party claiming damages. You must do so without reducing those damages by any percentage of fault you may have charged to that party. I also said that I would instruct you on the law of damages in just a minuite. [sic]
> Now, it's my personal responsibility as the judge involved in this lawsuit under the law to reduce the amount of damages that you assess against any party by the percentage of fault, if any, that you assign to that party.
> The party claiming damages will be entitled to damages if that party's fault is less than fifty percent of the total fault in the case. A party claiming damages who is fifty percent or more at fault however is not entitled to any damages whatsoever.
> Now, I hope I read that clearly to you. Take this part, as well as the entire charge that I gave you, and consider it. Do you think that will be helpful?
> PRESIDING JUROR: Yes, sir.
> THE COURT: Okay. You all work on it some more then.
> PRESIDING JUROR: We had a second question.
> THE COURT: I know you did. I will reread this to you. You must determine the total amount of damages sustained by any party that's claimed, and you must do so without reducing those damages by any percentage of fault you may have charged to that party. And I said that I would instruct you on the law of damages in a few minutes.
> Now, it is my responsibility under the law to reduce the amount of damages you assess against any party by the percentage of fault, if any, that you assign to that party.
> Now, you take this charge, as well as the entire charge, and all the rest of it, and do the best you can with it.

The jury returned a verdict finding that the plaintiff, Ms. Parker, was 49% at fault and the defendant bank was 51% at fault. The jury further found that Ms. Parker had suffered total damages in the amount of $8102.90. She was thus entitled to recover from Defendant 51% of her damages which is equivalent to $4132.48. Following the final order, the court denied Ms. Parker's motion for a new trial and an additur to the judgment. However, the court did grant $3600 of the discretionary costs sought by Ms. Parker.

## II. Issue

The gist of Ms. Parker's argument is that the jury's award of damages is not supported by material evidence. Ms. Parker contends that two circumstances surrounding this jury award indicate that the jury found that Ms. Parker suffered no pain, no suffering or no loss of enjoyment of life. First, the amount of the award, $8102.90, is the approximate amount of Ms. Parker's total medical bills. Second, in the midst of deliberation, the jury returned to ask the judge how the percentage of fault affects the damages award and whether the jury could award medical expenses only. It is Ms. Parker's position that since the record contains uncontroverted evidence that Ms. Parker did experience significant pain, suffering and loss of enjoyment of life, there is no material evidence to support this verdict which includes no damages for pain, suffering and loss of enjoyment of life.

Defendant argues that we should uphold the jury verdict by finding that the jury could have based its award for medical expenses on exhibit 13 alone which shows expenses at $7,890.90 thereby leaving $212.00 of the verdict amount for pain and suffering. A review of the record reveals a much more likely basis for the amount of the jury verdict. Though neither party mentioned it in appellate argument, the fact is that upon entry of exhibit 13 into evidence, Ms. Parker testified that this exhibit's compilation of expenses represented all of her medical expenses *except for $212.00* for the removal of her cast. This cannot be a coincidence: we find that the jury's award of $8,102.90 represents the $7890.90 for expenses shown by exhibit 13 plus the $212.00 additional expense testified to by Plaintiff. Therefore, we conclude that the jury awarded no money for pain, suffering and loss of enjoyment of life.

Our conclusion is bolstered by the dialogue between the presiding juror and trial judge which occurred after jury deliberation had begun. The jury posed two questions to the judge: how does the percentage of fault affect the damages award and could the jury award only medical expenses. The trial judge responded by re-instructing the jury that it must determine the total amount of

damages sustained by the party and that the court would reduce these damages by a percentage of fault. When the presiding juror specifically referred to its second question involving the propriety of an award for medical expenses only, the trial court again instructed the jury to determine the total amount of damages and to let the trial court reduce the amount of damages by the percentage of fault. The jury could easily have interpreted this as an affirmative response to its question. We thus find that the jury's question and the court's response are further indications that the jury did exactly what it asked the court if it could do: it awarded only medical expenses to Plaintiff.

As Ms. Parker points out, the record contains undisputed evidence that she experienced pain by establishing that she fractured her ankle, that she was placed in a cast on two occasions for multiple weeks, that she was given pain medication, that she underwent surgery and that she received physical therapy. Furthermore, her normal life activities were interrupted for more than eighteen months. Defendant made no attempt to contest Plaintiff's testimony or the testimony of Dr. Henson regarding any aspect of her injury, including her claim of pain and suffering. As Plaintiff argues on appeal, her injury was objective and demonstrable: it did produce pain, surgery, immobilization and confinement.

Once a trial judge has approved the amount of a verdict, review in the Court of Appeals is subject to the rule that if there is any material evidence to support the award, it should not be disturbed. *Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 331n2 (Tenn. 1996); *Ellis v. White Freightliner Corp.*, 603 S.W.2d 125, 129 (Tenn. 1980); *Benson v. Tennessee Valley Elec. Co-op.*, 868 S.W.2d 630, 640 (Tenn. Ct. App.1993); Tenn. R. App. P. 13(d). "This deferential standard of review is consonant with the principle, long recognized in Tennessee law, that the jury bears primary responsibility for awarding damages in a personal injury case, followed closely by the trial court in its role as thirteenth juror." *Coffey*, 929 S.W.2d at 331n2.

Under the facts as established by the record, there is no material evidence to support a damage award to Plaintiff which does not include any amount for pain, suffering and loss of enjoyment of life. With regard to the allocation of fault between the parties, the jury's decision was not appealed. We therefore reverse the jury's verdict as to the amount of damages only. We remand this case to the trial court for a trial on the damage issue alone. *See Lane v. John Deere Co.*, 767 S.W.2d 138, 143 (Tenn. 1989) (affirming a jury verdict as to liability, but finding that proof of damages was inadequate such that the case must be remanded for a new trial on the issue of damages only).

5

### III. Conclusion

We find that the jury's damage award is not supported by material evidence. Therefore, that portion of the jury verdict awarding damages to Plaintiff in the amount of $8,102.90 is reversed, and this case is remanded for a new trial on the issue of damages. The costs of appeal should be assessed against the appellee, First American Bank.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
PATRICIA J. COTTRELL, JUDGE


_____
W. FRANK CRAWFORD, JUDGE