# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 13, 2000 Session

## OLD REPUBLIC SURETY COMPANY v. MORRIS ESHAGHPOUR

**Appeal from the Circuit Court for Davidson County**
**No. 98C-1087     Walter C. Kurtz, Judge**

---

**No. M1999-01918-COA-R3-CV** - Filed November 30, 2001

---

The defendant purchased a building permit bond from the plaintiff surety company and executed an indemnity agreement to hold the surety harmless against all loss, liability and expenses the company might sustain on the bond. A claim was made against the bond regarding a home built by the defendant. The surety company notified the defendant, investigated the claim, and eventually settled with the claimant. In this lawsuit to collect under the indemnity agreement, the trial court granted summary judgment to the surety. The defendant argues that summary judgment was inappropriate because the motion was not properly supported according to the Rules of Civil Procedure and, alternatively, the issue of whether the surety acted reasonably and in good faith in settling the claim precludes summary judgment. We disagree and affirm the summary judgment on the issue of liability, but remand for proof on total damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in part, Vacated in part and Remanded**

PATRICIA J. COTTRELL J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

Todd E. Panther, Nashville, Tennessee, for the appellant, Morris Eshaghpour.

Melissa Kurtz, Nashville, Tennessee, for the appellee, Old Republic Surety Company.

## OPINION

The Defendant/Appellant, Morris Eshaghpour, is the owner of Morris Eshaghpour Construction Company ("MECC"). Plaintiff/Appellee, Old Republic Surety Company, issued a surety bond on behalf of MECC in 1990. The permit bond was required by the Metropolitan Government of Nashville and Davidson County; the government, specifically, the Department of Codes Administration, was the obligee, and the bond was "for the benefit of the Metropolitan Government, and for the benefit of the owners of property on which work is performed by the Principal pursuant to a permit issued under this bond . . . ." Mr. Eshaghpour executed an indemnity

agreement in which he agreed, *inter alia*:

>(2) To indemnify the Company [Old Republic] and hold it harmless against all loss, liability, costs, claim damages, and expense, internal or external of whatever kind and nature including but not limited to investigative, accounting, engineering, the fee and disbursement of counsel whether salary, retainer or otherwise which the Company may sustain or incur for or by reason of said Company writing said bond(s);

>(3) If requested, to place the Company in funds immediately to meet any claim or demand before the Company shall be required to make payment

>    . . . .

>(7) To authorize the Company to adjust, settle or compromise any claim, demand, suit or judgment upon said bond(s) and defend such suit and appeal such judgment or at its election to have the case, cross-action or proceeding, or any part of it or them dismissed or any appeal, writ of error, certiorari or any part thereto dismissed . . . .

>    . . . .

>(11) In the event of any payment by the Company, Indemnitors agree to pay the Company interest at the prime rate plus 2% (unless prohibited by law, then at the maximum rate allowed) charged at a major bank located in the State in which Indemnitors reside.

A claim was made against the permit bond by Ms. Moyer who bought a house built by MECC. The Department of Codes Administration, the obligee under the permit bond, inspected Ms. Moyer's property, notified Old Republic of the deficiencies and directed Old Republic, as surety, to make the necessary repairs. After a series of communications, set out later in this opinion, the final result was that Old Republic paid for the repairs to Ms. Moyer's house and sued Mr. Eshaghpour for reimbursement under the indemnity agreement.

The trial court granted summary judgment to Old Republic in the amount of $17,220.88 plus attorneys fees of $2,237.50. Mr. Eshaghpour appeals and argues that the summary judgment should not have been granted because the motion was not properly supported and because the issue of Old Republic's good faith involves factual questions which are inappropriate for summary judgment.

## I.

Because of the nature of Mr. Eshaghpour's arguments, analysis of the issues in this appeal is best approached by first identifying the facts which are material to the question of whether Old Republic is entitled as a matter of law to judgment. Which facts are relevant depends, of course, on the legal questions presented.

2

It is undisputed that Mr. Eshaghpour executed the indemnity agreement attached to the complaint and quoted earlier in this opinion. In this lawsuit, Old Republic seeks to enforce the agreement to reimburse it for expenses related to claims against the bond. Generally, there are two recognized defenses an indemnitor can raise when a surety seeks reimbursement for claims settled over the principal's protest: (1) that the surety did not settle in good faith or (2) that the surety did not act in a reasonable and prudent manner. John Hinchey, *Surety's Performance Over Protest of Principal: Considerations and Risks*, 22 TORT & INS. L.J. 133, 148 (1986). Jurisdictions vary in whether only the lack of good faith defense is available or whether the surety is also held to a reasonableness standard. *Id.* Tennessee law requires that, in order for a surety to recover under an indemnity agreement, the surety must act both reasonably and in good faith. *Feld Truck Leasing v. ABC Transnational Transp.*, 681 S.W.2d 554, 556 (Tenn. Ct. App. 1984); *Central Towers Apartments, Inc. v. Martin*, 61 Tenn. App. 244, 262, 453 S.W.2d 789, 799 (Tenn. Ct. App. 1969); *Gulf Ins. Co. v. Construx, Inc.*, No. M1999-02803-COA-R3-CV, 2001 WL 840240, at *17 (Tenn. Ct. App. Jul. 26, 2001) (no Tenn. R. App. P. 11 application filed).

An indemnity agreement is subject to the general law of contracts, and every contract contains an implied obligation of good faith and fair dealing in its performance and enforcement. 2 PERILLO AND BENDER, CORBIN ON CONTRACTS § 5.27, at 139 (rev. ed. 1995). Thus, "[t]here is no doubt that, in performance of its duty to indemnify the insured, the insurer is bound to exercise "good faith" and to act fairly in the interest of the insured." 3 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 572A, at 355 (1960).

Our Supreme Court has defined the scope of the good faith obligation in other commercial settings. In *Lane v. John Deere Co.*, 767 S.W.2d 138 (Tenn. 1989), the Court stated, "The good faith requirement [in the UCC's acceleration of a debt provision] . . . imposes 'an honest intention to abstain from taking any unconscientious advantage of another, even through the forms and technicalities of the law.'" *Id.* at 140 (citations omitted). Additionally, as the trial court herein noted, the Court in another commercial context has accepted that "bad faith can be defined as a knowing or reckless disregard of a customer's rights." *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996). In its opinion in that case, the Court acknowledged that Tenn. Code Ann. § 47-1-201(19), the UCC's definition of good faith,[1] makes a party's "good faith" dependent upon its "honesty." The Court found, however, that "the word 'honesty,' which is not defined in the code, is susceptible to more than one definition." *Id.* at 549.

As our Supreme Court did in *Glazer,* courts have sometimes sought guidance in defining good faith in the Uniform Commercial Code's definition. With regard to that definition:

> The Second Restatement of Contracts defines good faith in essentially the same terms as the UCC. One portion of the comment to Restatement of Contracts § 205 explains that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness

---

[1]In Tenn. Code Ann. § 47-1-201(19), Tennessee adopted the Uniform Commercial Code's definition of good faith, "honesty in fact in the conduct or transaction concerned."

to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." The invocation of community standards of reasonableness suggests good faith necessarily incorporates an objective, almost tortlike measure, not withstanding the ostensibly subjective ("honesty in fact") language of the Article 1 definition. And the Restatement of Contracts comment confirms that a reasonableness analysis is appropriate.

PETER A. ALCES, THE LAW OF SURETYSHIP AND GUARANTY ¶ 3.01[2][a][ii] (1997) (footnotes omitted).

Essentially, a surety has a duty to reasonably investigate the claim, counterclaim and all possible defenses and act in good faith in settling a claim. *Southern Fire & Cas. Co. v. Norris,* 35 Tenn. App. 657, 668, 250 S.W.2d 785, 790 (Tenn. Ct. App. 1952); *United States of Am. for the use of the Trustee of the Elec. Workers Local Pension Fund v. D Bar D Enter., Inc.*, 772 F. Supp. 1167, 1170 (D. Nev. 1991). The indemnitor has the concomitant duty to fully cooperate with the surety. *Southern Fire & Cas.*, 35 Tenn. App. at 668, 250 S.W.2d at 790; *Safeco Ins. Co. of Am. v. Criterion Inv. Corp.*, 732 F. Supp. 834, 842 (E.D. Tenn. 1989) (defendants' failure to deal with the claimants under the bond after the surety's repeated requests that it do so was "precisely" what made the surety's conduct reasonable).

As the party seeking to avoid enforcement of the indemnity agreement, Mr. Eshaghpour pled bad faith as an affirmative defense. The burden of proof for an affirmative defense is placed upon the party who raises it. *Association of Owners of Regency Park Condo. v. Thomasson*, 878 S.W.2d 560 (Tenn. Ct. App. 1994). Thus, Mr. Eshaghpour bore the burden of demonstrating that Old Republic acted in bad faith or unreasonably in settling the claim. *Gulf Ins. Co. v. Construx, Inc.*, 2001 WL 840240, at *20; *Greene County Bank v. Southeastern Properties, Inc.*, No. 03A01-9604-CH-00124, 1996 WL 471469, at *2 (Tenn. Ct App. Aug. 21, 1996) (no Tenn. R. App. P. 11 application filed) (burden of proving affirmative defense to deficiency action of failure to exercise good faith was on defendant). For purposes of defeating the motion for summary judgment, Mr. Eshaghpour was required to demonstrate the existence of a dispute of fact that was material to the legal issue. The only facts relevant to his defense of lack of good faith are those facts detailing Old Republic's actions and efforts and his response; the merits of whether he was responsible for the repairs performed on Ms. Moyer's house were not before the trial court on the motion and are not before us.

II.

The relevant facts break down into three categories: (1) those alleged and sworn to by Mr. Eshaghpour and not disputed by Old Republic; (2) those alleged by Old Republic and admitted or proved by Mr. Eshaghpour; and (3) those alleged by Old Republic which Mr. Eshaghpour asserts are not supported by proof in the record.

4

(1)  Mr. Eshaghpour asserts, and Old Republic has not disputed, the following:

In August 1994 MECC entered into a contract for the sale of residential real estate to Joy Ann Moyer.  The Department of Codes Administration of Metropolitan Nashville and Davidson County issued a letter of occupancy on November 2, 1994, stating

> Through routine inspections and visual observations, we have determined that the work performed substantially complies with the requirements of the applicable codes and ordinances . . . .  However, granting of this Final Use and Occupancy in no way relieves the contractor of its responsibility for any work performed not in accordance with applicable codes and ordinances.

In December of 1994, Ms. Moyer began experiencing and noting problems and complained to Mr. Eshaghpour, who denied all responsibility for the problems.  Specifically, Mr. Eshaghpour stated that the problems were due to alterations and changes that Ms. Moyer had made to the topography of the land after she moved in and to drainage problems caused by other construction taking place at the top of the hill behind her home.

Old Republic was notified of the problems by Ms. Moyer, and it notified Mr. Eshaghpour of Ms. Moyer's  claim in a letter dated June 28, 1995.  In addition to setting forth the claim and reminding Mr. Eshaghpour of the indemnity agreement, Old Republic stated in pertinent part:

> You have the primary responsibility to resolve this problem.  It is requested that you advise us as to your position relative to this claim.
>
>         . . . .
>
> It is requested that you contact the undersigned immediately and advise us of your intentions.  Failure to do so can result in cancellation of your bond and the revocation of your Metropolitan Government Permit.

Mr. Eshaghpour responded to this letter on July 12, 1995, by denying all responsibility and explaining why he was not responsible.  He only addressed the excess water or drainage issue and not the other problems complained of by Ms. Moyer.

Thereafter, on July 24, 1995, Old Republic wrote back to Mr. Eshaghpour and told him that it would require Ms. Moyer to prove her claim or else it would be denied, but that Old Republic would "continue to look to your company to indemnify Old Republic Surety Company should the claimant persist in her claim."

(2) Old Republic alleges and Mr. Eshaghpour has admitted or proved, as explained, other facts:

5

In support of its Motion for Summary Judgment, Old Republic filed a Statement of Material Facts. Attached to that Statement and referenced therein were several documents. Although Mr. Eshaghpour denied most of the statements of fact on the basis that they were not supported by specific citation to the record, the following facts were included in both Old Republic's Statement of Material Facts and in Mr. Eshaghpour's Response and Memorandum in Opposition to the summary judgment motion or in his affidavit supporting that Reponse.

Ms. Moyer then made a complaint to the Department of Codes Administration, which, in turn, made an inspection and notified Old Republic to make the necessary repairs as surety. In a letter dated October 2, 1995, the Codes Department stated:

> The items listed in the attached sheet[2] have not been completed so as to comply with the requirements of the Metropolitan Building Codes. The contractor is unwilling to comply with these requirements.
>
> Therefore, in accordance with the terms and conditions of the bond and Metropolitan Code of Laws, we hereby notify you to secure the services of a licensed and bonded contractor to make the necessary repairs to this property to bring it into compliance with Metropolitan Code of Laws.

Upon receiving this letter, Old Republic sought to have MECC make the repairs on the enclosed list. Old Republic sent a copy of the letter and code violations list to Mr. Eshaghpour with a letter stating "It is requested that you take immediate steps to resolve this situation. As we have previously advised, we will look to your company to indemnify Old Republic Surety Company from any loss, cost or expense." In his affidavit, Mr. Eshaghpour testifies that he received this letter on October 18, 1995. He does not state that he responded in any way to the letter. Rather, he asserts,

> The October 18, 1995 letter from Old Republic Surety Company requested that I take immediate steps to resolve the situation. However, the items identified in the October 2, 1995 letter from the Department of Codes Administration were items that were not MECC's responsibility. I had explained to Ms. Moyer that these items were not MECC's responsibility in December 1994, and I gave this explanation to Old

---

[2]The list contained violations including:

1. Correct the location of the positive drain to remove crawl space drainage to daylight. Gravel as necessary the foundation walls to create positive flow to crawl space drain.
2. Slope landscape so as to provide drainage away from the house. Remove earth as needed to correct grade to construction provisions. Curb area across foundation under HVAC supply ducts and unit where storm water drains to crawl space area.
3. Complete installing two approved columns where tributary beam is not supported at intervals provided by the provisions.
4. Correct floor undulation in kitchen area where needed to level out floor.
5. Repair nail pops and seam cracks in sheetrock where needed.
6. Repair electrical light and outlet to operate as per National Electrical Code.

Republic Surety Company in my July 21, 1995 letter.

Thus, Mr. Eshaghpour rested his position on his July 1995 response to Ms. Moyer's complaints. He did not reply to the new correspondence that included a claim from the obligee of the permit bond, Metro Codes Administration, or that department's itemization of the ways in which the house did not meet building codes.

(3) Old Republic alleges, and Mr. Eshaghpour claims the allegations are unsupported, additional facts, as explained below:

Old Republic also included the following in its Statement of Material Facts and attached documents supporting the statements. Mr. Eshaghpour did not factually dispute the following assertions; he offered no contrary testimony in his affidavit. However, in his response to Old Republic's Statement of Material Facts, he denied the following solely on the basis that the statements were not supported by specific citation to the record.

After Old Republic received no response from Mr. Eshaghpour to its October letter, it again wrote to him on December 21, 1995, stating:

> We have been advised by the Metropolitan Government of Nashville and Davidson County of Tennessee that the code violations . . . have still not been corrected. We have been advised by the building inspector to secure the services of a license[d] and bonded contractor to make the necessary repairs to this property to bring it into compliance with the Metropolitan code of laws. . . .

> Since we have written to you several times regarding this matter, we are going to proceed in fulfilling our obligation under your bond. I want to assure you, however, that we fully intend to take legal action against you to recover any and all loss, cost and expense this company incurs pursuant to the bond application and indemnity agreement that you executed on January 26, 1990. . . .

> Unless we hear from you within five days of receipt of this letter, we shall proceed accordingly.

Attached to Old Republic's Statement of Material Facts was a copy of this December letter and a copy of a receipt for the letter bearing what is purported to be Mr. Eshaghpour's signature.

Old Republic's Statement of Facts further states that, receiving no response from MECC, Old Republic authorized Ms. Moyer to hire an independent third party to inspect the premises and provide an opinion and a bid. Old Republic attached a letter to its Statement of Facts which was from it to the independent inspector, Donald Estes of Ray Bell Construction, and enclosed in that letter was the October 2 letter from Metro Codes and Mr. Eshaghpour's July letter explaining why he was not liable. Mr. Estes provided a report that concurred with the October 2 letter and provided

7

an estimate to repair the listed items. Old Republic then reached a settlement with Ms. Moyer, hired the contractors to make the necessary repairs, paid those contractors and Ms. Moyer, and then sought indemnification from Mr. Eshaghpour.

III.

In granting Old Republic's motion for summary judgment, the trial court stated:

The Court finds, that in the face of the letters written to the defendant in both October and December, 1995, that the defendant cannot rely upon his July 1995 response in order to make Old Republic's decision to settle one of bad faith. The record before the Court indicates a course of conduct by Old Republic that could not be interpreted as bad faith. The defendant in his contract with Old Republic had agreed "to authorize the company to adjust, settle or compromise any claim, demand or suit for judgment upon said bonds. . . ."

The Supreme Court of Tennessee recently addressed the definition of good faith-bad faith in *Glazer v. First American National Bank*, 930 S.W.2d 546, 549-50 (Tenn. 1996). There the Court acknowledged that "bad faith" is a term that not only includes "instances of outright deception and untruthfulness," but also includes "actions in knowing or reckless disregard of customers contractual rights."

The Court is of the opinion, however, the plaintiff's actions here show not only an absence of dishonesty, but cannot be interpreted as showing a knowing or reckless disregard of Mr. Eshaghpour's rights. The defendant confuses the good faith obligation of the plaintiff with an argument that the plaintiff could have been more diligent or negotiated a better result. A better result is not an absence of good faith.

Tennessee law defines good faith, in relation to the Uniform Commercial Code, at 47-1-201(19) as "honesty in fact in the conduct or transaction concerned." The touchstone case in Tennessee on "good faith" related to a settlement is *Southern Fire and Casualty v. Norris*, 35 Tenn. App. 657, 250 S.W.2d 785 (Tenn. App. 1952). The Court emphasized that it would look to the reasonableness of the investigation so that an informed judgment could be made and it emphasized that a mere mistake of judgment would not constitute bad faith. *See also Perry v. United States Fidelity and Guaranty*, 359 S.W.2d 1, 6-7 (Tenn. App. 1962).

Here, the plaintiff investigated the claim, hired an independent evaluator, kept the defendant informed and settled the claim. The plaintiff wrote one response (the July 1995 letter) and then ignored all the subsequent correspondence. Even taking the evidence in the light most favorable to the defendant the Court finds that the facts could not support a finding of bad faith on the part of the plaintiff.

We agree with the trial court's basic analysis. Although the trial court relied upon facts that Mr. Eshaghpour contends could not be considered, we conclude that the grant of summary judgment on the issue of liability is supported by the facts proved or undisputed by Mr. Eshaghpour. Old Republic sued on the basis of the indemnity agreement which Mr. Eshaghpour admitted that he executed. Mr. Eshaghpour's claims that he was not liable because Old Republic had not settled in good faith were raised as a defense. Thus, Mr. Eshaghpour had the burden of establishing disputed facts relative to that issue. *See Third Nat'l Bank in Nashville v. Azalea City Motels, Inc*. No. 01A01-9011CH00420, 1991 WL 148027, at * 5 (Tenn. Ct. App. Aug. 7, 1991). He admitted receiving and introduced into the record the October letter from Old Republic along with the enclosed letter and list of code deficiencies from the Department of Codes. He presented no facts or factual allegations regarding any steps he took to communicate with Old Republic or to provide information to Old Republic with which to dispute the claim after receiving this letter. Instead, he continued to rely on his July letter responding to complaints from Ms. Moyer. As the trial court stated, Mr. Eshaghpour "cannot rely upon his July 1995 response in order to make Old Republic's decision to settle one of bad faith." In essence, Mr. Eshaghpour would have us hold that a surety cannot settle a claim in good faith in the face of silence from the indemnitor. That is not the law.

In reviewing this grant of summary judgment, we must view the evidence in the light most favorable to Mr. Eshaghpour and must also draw all reasonable inferences in his favor. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996). We will uphold a summary judgment only when the undisputed facts reasonably support one conclusion - that the movant is entitled to a judgment as a matter of law. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Mr. Eshaghpour has asserted that summary judgment was not appropriate because good faith is a question of fact to be determined after trial. We agree that as a general rule, good faith, or the lack thereof, as well as reasonableness, should be determined in the context of the specific factual situation involved. "What is good faith depends, it is obvious, upon the facts and circumstances of each case." *Criterion Inv. Corp.*, 732 F. Supp. at 841; *see also Lane*, 767 S.W.2d at 142 (any evidence tending to show other than good faith basis for the action is material); *Central Towers*, 61 Tenn. App. at 267, 453 S.W.2d at 799 (courts must look to all the facts of the case to determine whether it was reasonably necessary for the surety to so act in its own defense, and whether the surety acted in good faith toward the principal).

That is not to say, however, that summary judgment is never available when the question of good faith or reasonableness is a determinative issue. To the contrary, summary judgment is proper in virtually any civil case that can be resolved on legal issues alone, *Tomlinson v. Kelley*, 969 S.W.2d 402 (Tenn. 1997), and is available in all civil cases, *Owen v. Stanley*, 739 S.W.2d 782 (Tenn. Ct. App. 1987). *See also Perry v. United States Fidelity & Guar. Co.*, 49 Tenn. App.662, 678, 359 S.W.2d 1, 8 (1962) (directed verdict appropriate where there was no competent proof that insuror acted in bad faith in refusal to settle). Where there is no dispute as to material facts, summary judgment is available if the movant is entitled to judgment as a matter of law. Through his own responses and affidavit, Mr. Eshaghpour established the existence of his agreement to indemnify Old

9

Republic and some of the course of conduct between them after a claim was made. A motion for summary judgment may be supported by admissions of the other party. *Read v. Thomas*, 679 S.W.2d 467, 469 (Tenn. Ct. App. 1984). Mr. Eshaghpour has failed to demonstrate the existence of any disputed fact which legitimately calls into question Old Republic's good faith settlement of the claim.

On appeal, Mr. Eshaghpour states:

Prior to paying this disputed claim, Old Republic Surety Company never called upon Mr. Eshaghpour to deposit funds to cover any potential liability associated with asserting defenses to Ms. Moyer's claim; and Old Republic never defended or gave Mr. Eshaghpour the opportunity to defend against Ms. Moyer's claim.

By paying Ms. Moyer's claim over his strenuous objections, Old Republic Surety Company denied Mr. Eshaghpour the opportunity to hire counsel and defend against the claims for both himself and Old Republic Surety Company. Old Republic Surety Company never tendered its defense of this case to Mr. Eshaghpour or allowed him the opportunity to hire counsel to protect his interest and the interest of Old Republic Surety Company. Old Republic Surety Company never asserted the defenses that Mr. Eshaghpour had and was prepared to raise; and by paying Ms. Moyer's claim over his objections, Old Republic Surety Company denied Mr. Eshaghpour the opportunity for a court to determine the merits of Ms. Moyer's claim and his defenses to that claim.

The indemnity agreement does not require Old Republic to request that the indemnitor deposit funds as a prerequisite to its right to indemnity. Furthermore, the agreement grants Old Republic the right to settle any claim. Mr. Eshaghpour was given opportunity to dispute the allegations of code violations in the Department of Codes letter, but he does not allege that he provided any such information to Old Republic after receiving that letter. The judgment of the trial court that Old Republic settled the claim reasonably and in good faith, and is thereby entitled to judgment for reimbursement of costs and expenses it incurred, is hereby affirmed.

IV.

Mr. Eshaghpour's arguments regarding the lack of evidentiary support for Old Republic's motion for summary judgment, with regard to liability, is answered by the discussion above. However, those arguments must also be considered in regard to the amount of the judgment. While Mr. Eshaghpour had the burden of proving the defense he raised to liability, Old Republic had the burden of proof with regard to its damages. *Inman v. Union Planters Nat'l Bank*, 634 S.W.2d 270, 272 (Tenn. Ct. App. 1982).

We have already determined that Old Republic proved, through Mr. Eshaghpour's admissions and affidavit if not otherwise, the existence of the guaranty agreement. Additionally, Mr.

Eshaghpour admitted receiving the October correspondence. Because he failed to assert facts to support his good faith defense, Old Republic was entitled to judgment on liability. In addition to the payments it made to resolve the claim, Old Republic requested an award of attorney fees as part of the "loss, liability, costs, claims damages, and expense . . . including . . . the fee and disbursement of counsel" against which Mr. Eshaghpour indemnified it. The request for and award of attorney fees were supported by an affidavit claiming $2,237.50 in attorney fees.

With regard to the remainder of losses and expenses incurred by Old Republic by its issuance of the bond and, therefore, the remainder of the recovery due under the indemnity agreement, Old Republic alleged in its complaint that the balance due and owing as a result of the repairs pursuant to the bond was $17,220.88 and that Mr. Eshaghpour had failed to pay the amount due despite demand. In his answer, Mr. Eshaghpour admitted that Old Republic had made demand for payment, but denied the remainder of the allegations. In its motion for summary judgment, Old Republic alleged it suffered a loss of $17,220.88 and filed a Statement of Material Facts which stated that Old Republic had paid that sum as settlement in full of all obligations for the original claim. Both documents refer to an exhibit which included an estimate for repairs, copies of canceled checks, and a release by Ms. Moyer acknowledging receipt of funds. The filings included no affidavit or other sworn testimony.

In response to the portion of Old Republic's Statement of Material Facts dealing with payments in settlement of the claim, Mr. Eshaghpour replied, "Contrary to Rule 56.03, this statement is not supported by a specific citation to the record. Accordingly, it is DENIED." In his brief, Mr. Eshaghpour explains this somewhat cryptic statement: "Old Republic Surety Company made no citations to the record, because there was no record to cite to."[3] Essentially, he argues that by failing to provide any sworn evidence, Old Republic failed to meet its burden of proof and is not entitled to judgment.

Mr. Eshaghpour argues that because Old Republic filed no sworn testimony, summary judgment was not available under the terms of Tenn. R. Civ. P. 56.04 which provides that such judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a mater of law." He asserts that Old Republic's attachment of unverified documents to its Statement of Material Facts is insufficient to establish material facts.

A party seeking summary judgment has the burden of demonstrating that its motion satisfies

---

[3]At oral argument, there was some dispute on the specificity with which the issue may have been raised at the hearing on the motion for summary judgment. It is unclear from the record before us whether Mr. Eshaghpour's problem with Old Republic's evidentiary support for their motion was brought to the attention of the trial court. We have no transcript of the argument, and the trial court did not allude to this issue in its order. However, it is clear that Mr. Eshaghpour argued in his memorandum in opposition to summary judgment that Old Republic, by failing to present sworn testimony in support of its motion, had failed to meet its burden of proof and was not entitled to judgment.

the requirements of Rule 56. *Carvell v. Bottoms*, 900 S.W.2d at 25. The burden includes demonstrating that it is entitled to judgment as a matter of law. *Jones v. City of Johnson City*, 917 S.W.2d 687 (Tenn. Ct. App. 1995). A party seeking damages has the burden of proving them. *Inman*, 634 S.W.2d at 272. In order to be entitled to judgment in a specific amount, a plaintiff must prove the amount of loss. Herein, Mr. Eshaghpour did not admit to the amount of the loss by Old Republic in performance of its responsibilities under the indemnity agreement. Thus, Old Republic was not entitled to any particular judgment amount absent proof. The allegation of the amount of its loss was supported only by unsworn statements and unauthenticated copies of cancelled checks and other documents attached to the Statement of Material Facts. Such materials do not constitute proof sufficient to support judgment.

The types of evidentiary material which can be relied upon to support a summary judgment have been discussed in a well-known treatise:

> In addition to the pleadings, Rule 56(c) expressly provides that the court may make use of depositions on a summary-judgment motion. Only that portion of a deposition that would be admissible in evidence at trial may be introduced on a summary-judgment motion, however. . . .

> Prior to 1963, Rule 56(c) did not specifically permit the use of answers to interrogatories on a motion for summary judgment, although courts generally permitted them to be presented. In 1963 this omission in the rule was corrected by an amendment expressly providing for the use of answers to interrogatories on a summary-judgment motion as long as they satisfy the other requirements in Rule 56 and contain admissible material. . . .

> Rule 56(c) also permits the court to consider any "admissions on file." The quoted words make it clear that the admissions need not be pursuant to Rule 36; they may have emerged at the pretrial conference, have occurred during the oral argument on the motion, have been made in connection with one of the other discovery procedures, or have their roots in a joint statement or stipulation by counsel. . . . The admission must be in a form that is admissible in evidence.

> One of the most common forms of evidence used on a summary-judgment motion is affidavits. Affidavits in support of or in opposition to a Rule 56 motion are not required by the rule; they are simply permitted. The failure to introduce affidavits will not prevent summary judgment if the prerequisites for granting the motion have been satisfied in some other fashion. . . .
> . . . .

> Exhibits that have been properly made a part of an affidavit may also be considered. Indeed, Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit. . . . To be admissible,

12

documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could have been admitted into evidence. Thus, a letter submitted for consideration under Rule 56(e) must be attached to an affidavit and authenticated by its author in the affidavit or deposition.

As is true of other material introduced on a summary-judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged. The objection must be timely or it will be deemed to have been waived.

10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2722 (3d ed. 1998) (footnotes omitted).

The statement of material facts which the moving party contends are not disputed, as required by Tenn. R. Civ. P. 56.03, does not constitute proof of the facts therein and does not substitute for such proof. That rule provides:

In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment made pursuant to Rule 56 of the Tennessee Rules of Civil Procedure shall be accompanied by a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record.

Any party opposing the motion for summary judgment must . . . . file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

As the Advisory Commission Comment to this rule makes clear, its purpose is to assist the court in "focusing on the crucial portions of the record." Tenn. R. Civ. P. 56 Advisory Commission cmt. [1997]. The statement is for the benefit of the court in deciding motions for summary judgment. *Selvy v. Vinsant*, No. 03A01-9903-CV-00081, 1999 WL 894435, at *1 (Tenn. Ct. App. Oct. 13, 1999); *Butler v. Diversified Energy, Inc.*, No. 03A019804CV00146, 1999 WL 76102, at *3 (Tenn. Ct. App. Jan. 28, 1999). The statement does not itself introduce factual information into the record; instead, it directs the court to the location of facts established elsewhere by evidentiary materials complying with Rule 56.

Finally, the unverified documents attached to the Statement of Material Facts could be considered in support of the Motion if Mr. Eshaghpour waived any objection. We agree with Old Republic that the failure to provide sworn testimony regarding the payments could have been

13

remedied with the filing of an appropriate affidavit in the trial court, and that Mr. Eshaghpour's response to the Statement of Material Facts could have made the deficiency clearer. His denial of the statements of fact on the basis they were not accompanied by a citation to the record was not a clear objection to the admissibility of the supporting attachments. However, in his memorandum in opposition to summary judgment, he clearly voiced his objection and the basis for it.

> The Court should also deny summary judgment because the Plaintiff has not presented a properly supported motion. . . . In this case, the Plaintiff has produced no sworn testimony to support its motion. It has merely restated its allegations in the Complaint and made a conclusory statement that the Defendant is liable. Because the Plaintiff has put forth no sworn testimony to support its position, the Plaintiff has failed to meet its burden of demonstrating that there are no disputed material facts creating a genuine issue for trial.

Therefore, Mr. Eshaghpour did timely object to the admissibility of the unverified and unauthenticated documents filed as attachments to the Motion and the Statement of Material Facts, including the canceled checks and other documents relating to the amounts paid to repair the house in question.

This court's role in review of the grant of summary judgment is well settled. Our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000). We must view the evidence in the light most favorable to the nonmoving party. *Id.* In our review of the record we find no evidence substantiating or establishing the amount of losses and expenses Old Republic incurred to repair Ms. Moyer's house or otherwise because of its obligations under the bond.[4] We are unable to affirm judgment on the amount of recovery under the indemnity agreement because there is simply no proof of the total amount of loss or expenses in the record. Where proof of damages is inadequate, but liability established, remand is appropriate. *Lane*, 767 S.W.2d at 142.

Therefore, we vacate the award of damages and remand to the trial court for proof, which may be by affidavit or sworn verification of the amounts paid by Old Republic due to the claim herein and, therefore, owing under the indemnity agreement.

V.

For the reasons stated herein, we affirm the trial court's grant of summary judgment on the issue of liability and the award of attorney fees. However, this cause is remanded to the trial court

---

[4]As described earlier, Old Republic's claim for attorney fees was supported by an affidavit, and Mr. Eshaghpour filed no response or objection to that affidavit. Thus, there is evidence in the record to affirm that portion of the judgment awarding attorney fees and, therefore, to affirm that Old Republic suffered damages under the indemnity agreement.

for further proceedings regarding the amount of the total loss, liability, costs, and expenses incurred by Old Republic by reason of its issuance of the bond. Costs of this appeal are taxed equally between Appellant and Appellee, for which execution may issue if necessary.[5]

_____
PATRICIA J. COTTRELL, JUDGE

_____

[5]This court's assessment of costs on appeal in no way prevents the trial court from awarding such costs paid by Old Republic as part of its total loss and expenses, upon appropriate motion and proof.