**Betty Rose CUDE, Administratrix of the Estate of Jessie Robert Cude, Deceased, Petitioner,**

v.

**Nathan COUCH, Respondent.**

Supreme Court of Tennessee.

Oct. 22, 1979.

Lloyd S. Adams, Jr., Adams, Ryal & McLeary, Humboldt, for petitioner.

Dwight Hawks, Humboldt, for respondent.

## OPINION

COOPER, Justice.

This case presents the single question of whether, in purchasing certain assets of a partnership upon its liquidation, Nathan Couch breached the duty that he owed to his partner, J. R. Cude. We conclude, as did both courts below, that he did not.

The partnership in question was formed by Couch and Cude in 1965 for the purpose of operating a laundromat. The partnership rented space for the business, on a month-to-month basis, from Couch, in a building that housed Couch's car dealership. In 1973, Couch filed an action seeking to have the partnership dissolved. A receiver

was appointed, and operated the laundry for several months. On court order, and after advertisement, the assets of the partnership, which consisted of the equipment of the laundry, were sold at public sale. At the time of the sale, Couch indicated that he would not lease the building to anyone who might want to continue to operate the laundry there, and thus the purchaser of the equipment would have to remove it from the premises. The equipment was ultimately purchased by one Louis Platkin for $800.00. Although it was not revealed at the time of the sale, Platkin was an agent of Couch. Couch and his son have continued to operate the laundromat at the same location.

Cude moved to set aside the sale, or in the alternative for damages, contending in essence that Couch had purchased the equipment clandestinely, at a value artificially depressed by his refusal to permit others to lease the premises, and that in doing so he had gained an unfair advantage in a transaction with the partnership, breaching his fiduciary duty to Cude. After a hearing, the trial judge denied the motion. However, he permitted Cude to file an amended counterclaim. Cude did so, and in it restated substantially the same claim for relief that had been raised in the motion. This counterclaim was heard by a second trial judge, upon both the record of the prior hearing and additional testimony. This second trial judge also denied Cude's claim.[1] His judgment was affirmed by the Court of Appeals.

We agree with the several judges who have considered this case previously that Cude's claim is without merit. We do not question that partners owe each other a fiduciary duty in all matters pertaining to the partnership, and that this duty continues while the partnership is being liquidated. *See* T.C.A. § 61–120. We simply do not believe that, on the facts shown here, Couch breached his duty to Cude. There is no doubt but that Couch had an inherent advantage throughout the dealings in ques-

---

1. While this amended counterclaim was pending, J. R. Cude died. Since then, the action has been prosecuted by the administratrix of his estate, who is the petitioner before this court.

tion, as a result of his ownership of the property on which the laundromat operated. However, the record does not show that he used this advantage to force Cude out of the partnership. Absent such a showing, neither Couch's refusal to permit others to lease the premises, nor the manner and price of his purchase of the equipment—which together form the basis of the petitioner's complaint—can be termed improper. From the beginning of the partnership, Couch made it clear that he would not permit a lease of the property, in part to insure that the operation of the laundromat would not interfere with that of his car dealership, operating in the same building. The proof also shows that, at the time of the dissolution, Couch's determination in this regard was strengthened by his belief that he might need to put the space to use for other purposes on short notice, either to expand his dealership, or to provide office space for his son's medical practice. Under these circumstances, we cannot conceive that Couch's admitted duty to his partner would require that he lease the premises against his own best interests, despite the fact that the laundry could not be sold as a going business without a lease. As to the manner in which Couch purchased the equipment, while we agree with the petitioner that it would have been better had Platkin disclosed his agency, there is no suggestion in the record that his failure to do so, of itself, prejudiced either the partnership or Cude. Neither can we find anything objectionable in the price that Couch paid for the equipment. It was greater than the amount that Cude, who also bid on the equipment owned by the partnership, deemed prudent to offer. There were no other bidders, which would seem to suggest that the value of the property on the open market was minimal. The price offered at a public sale is the best indication of an item's worth. *See Davis v. Davis*, 149 Colo. 1, 366 P.2d 857 (1961); *Bagg v. Osborn*, 169 Minn. 126, 210 N.W. 862 (1926). Unquestionably, Couch had an advantage, divorced from the partnership, that made it more practicable for him to carry on the business of the partnership after dissolution than for

others. However, the fact that Couch benefited from that circumstance harmed neither Cude nor the partnership, and breached his duty to neither. *Cf. Davis v. Davis*, 149 Colo. 1, 366 P.2d 857 (1961).

The decision of the Court of Appeals is affirmed. Costs will be taxed to the petitioner.

BROCK and HARBISON, JJ., concur.

HENRY, C. J., and FONES, J., dissent.

HENRY, Justice, dissenting.

I respectfully dissent.

I cannot, in good conscience, acquiesce in the conclusions reached by my colleagues. While I am not prepared to say that Nathan Couch practiced a fraud upon his partner, there is no escape from the conclusion that there was an appalling breach of a fiduciary duty bordering upon sharp practices. This transaction simply cannot withstand the scrutiny of a court of equity. Courts, as Chancellor Gibson observes, "require good faith in dealings between men, and reprobate bad faith." *Gibson's Suits in Chancery* § 48 (4th ed. 1937). Just as a physician diagnoses internal disease by external signs, so do courts of equity diagnose and expose and treat practices that do not harmonize with good faith.

There are subtleties, refinements, shapes, forms and disguises presented in this record. When stripped to bare essentials, and analyzed in the light of fundamental fairness, they point unerringly to an unwholesome, unsavory and unfair transaction which, in my view, may not stand. We look to the record.

The laundry was purchased by Nathan Couch and his employee of twenty-six years, Robert Cude, without a lease, on September 9, 1975, for the sum of $7,000.00. They changed the name from the "Washtime Laundrymat" to the "C&C Laundrymat" and continued to operate it without a lease and in the same location. They replaced all machines with new ones. After owning and operating it for seven years and seven months, it was sold for $800.00. The

written appraisal of record shows the same laundry, the same or newer equipment, at the same location, and the same operation without a lease to have been worth $10,000.00.

Nathan Couch instituted suit for dissolution of the partnership and for the appointment of a receiver. The receiver is appointed and directed to "sell all property and assets of the partnership. . . ." As conducted, the sale was only as to the equipment and did not include the goodwill of a going business. What happened? The answer: Nathan Couch.

He stripped the partnership of its primary asset, the goodwill, by the simple expedient of an announced requirement that there would be no lease and the purchaser was expected to remove all equipment forthwith. This operated to shoot his partner out of the saddle.

At some time prior to the sale Nathan Couch's son, Dr. Charles Edward Couch, entered the picture, as the agent, servant and representative of his father. Dr. Couch, at the time, was practicing medicine in Memphis with Dr. Alan Platkin. Dr. Couch induced Dr. Platkin's father, Lewis Platkin, to come from Memphis to Humboldt, some ninety or more miles away, and purchase the laundry.[1] It is clear that Lewis Platkins was acting for Dr. Couch and that Dr. Couch had full authority from his father.

It is equally clear that the purchase money was paid either by Nathan Couch or through his Cadillac-Oldsmobile Agency owned 75% by him and 25% by Dr. Couch. Following what I am constrained to view as a premeditated plan to take over the laundry, the purchase was made, after the sale had been chilled by a no-lease, get-out announcement, the consideration paid, and immediately thereafter the utilities were converted to the name of "Couch's Laundromat."

Shortly thereafter the name of the establishment was changed to C Laundromat and then to Couch Laundromat. Immediately after the sale, Mr. Couch and Dr. Couch started to operate the business, and the record shows that, as of the date of the trial, June 2, 1977, they were still operating it, almost four years after the purchase at the receiver's sale.

The following testimony by Dr. Couch is significant:

Q. Was it not your intention to continue %y(3) 28. . . if your father bought the laundry equipment to continue the operation as it had been done?

A. I suppose so.

Q. So when your father became the high bidder you, in his behalf, carried out that intention, did you not?

A. Yes.

This testimony speaks more eloquently of the intent to squeeze out Robert Cude and take over the business than any language I might use.

Viewed from any angle, Nathan Couch failed to deal in good faith with his partner by advising him that he intended to purchase the partnership property and continue to operate the business. Instead the purchase was sly and surreptitious, and actually accomplished by using the court as an unwitting instrumentality through which this plan was consummated.

Nathan Couch has continued the business of the firm and has enjoyed all the benefits stemming from a direct succession and continuation of a going business. Moreover, he has appropriated to his own use and benefit the goodwill of a going business, for which the most elementary principles of equity and fair play demand that he pay just and reasonable compensation.

This whole transaction shocks my conscience. Justice Cardozo's famed remark in *Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928) is apt:

1. Lewis Platkin was a total stranger to those in attendance at the sale and he did not bother to make himself known until after the purchase. Cude did not know him. Dr. Couch was practicing medicine in Memphis and Nathan Couch was in his place of business playing tonk.

Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties.

I would reverse and remand to the trial court with instructions to determine the value of the partnership, as a going business, assuming a lease for the period this business has been operated by Couch since the sale, and for the entry of a decree making an appropriate award.

FONES, J., joins in this dissent.