IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 5, 2012 Session

## DICK BROADCASTING COMPANY, INC. OF TENNESSEE v. OAK RIDGE FM, INC. ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section
Chancery Court for Knox County
No. 150482-3     Michael W. Moyers, Chancellor**

**No. E2010-01685-SC-R11-CV - Filed January 17, 2013**

WILLIAM C. KOCH, JR., J., concurring.

I concur with the Court's decision to apply the implied duty of good faith and fair dealing to the three contracts involved in this case. I also concur with the Court's decision that neither party is entitled to a summary judgment because the current record reflects genuine disputes regarding the facts material to their claims and defenses. However, because there is no consensus regarding the scope of the implied duty of good faith and fair dealing in the context of arm's length commercial transactions, I write separately to address this important point.

The courts should tread cautiously when asked to recognize and enforce implied obligations that are not reflected in a written contract. The freedom to contract is "a vital aspect of personal liberty"[1] that ensures the right of competent persons to enter into contracts or to decline to do so, as long as the contract is not illegal or against public policy. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *McCall v. Carlson*, 172 P.2d 171, 187 (Nev. 1946)). It also ensures that contracting parties have "the right and power to construct their own bargains." *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 892 (Tenn. 2002) (quoting Blake D. Morant, *Contracts Limiting Liability: A Paradox with Tacit Solutions*, 69 Tul. L. Rev. 715, 716 (1995)).

The courts should "not lightly . . . interfere with [the] freedom of contract." *McKay v. Louisville & Nashville R.R.*, 133 Tenn. 590, 600, 182 S.W. 874, 876 (1916) (quoting

---

[1] 21 Steven W. Feldman, *Tennessee Practice: Contract Law and Practice* § 7:1, at 728 (2006) ("Feldman, *Contract Law and Practice*").

*Baltimore & Ohio Sw. Ry. v. Voigt*, 176 U.S. 498, 506 (1900)). "In an arm's length [commercial] transaction, the parties' freedom to contract is an important right that must be jealously guarded . . . from unnecessary intervention by the courts." *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 754 (Ill. App. Ct. 1987); *see also* 21 Feldman, *Contract Law and Practice* § 8:4, at 861; Friedrich Kessler & Edith Fine, *Culpa in Contrahendo, Bargaining in Good Faith, and Freedom of Contract: A Comparative Study*, 77 Harv. L. Rev. 401, 449 (1964). Accordingly, the courts should decline "to make a new contract for parties who have spoken for themselves." *Smithart v. John Hancock Mut. Life Ins. Co.*, 167 Tenn. 513, 525, 71 S.W.2d 1059, 1063 (1934). In the absence of fraud or mistake, the courts should construe unambiguous written contracts as they find them. *Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009).

Questions involving the scope and application of the implied duty of good faith and fair dealing are far from settled.[2] Professor Smith has noted that the implied duty of good faith and fair dealing and fiduciary duty[3] are "variations on a theme" in that "[b]oth are judicially imposed loyalty obligations designed to attack the potential for opportunism in relationships." Smith, 55 Vand. L. Rev. at 1487-88. However, absent extraordinary circumstances, parties dealing at arm's length[4] in a commercial transaction lack the sort of relationship of trust and confidence that gives rise to a fiduciary relationship. *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 441 (S.D.N.Y. 2006) (quoting *National Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 679 (S.D.N.Y. 1991)); *EBC I, Inc. v. Goldman Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005); *see also Cude v. Couch*, 588 S.W.2d 554, 557-58 (Tenn. 1979) (Henry, J., dissenting) (quoting *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (stating that "[m]any forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties")). Accordingly, the implied duty of good faith and fair dealing, in the context of commercial transactions, is "weaker" than the duty owed by fiduciaries because it "qualifies rather than negates the assumption of selfishness that applies to a contract." Smith, 55 Vand. L. Rev. at 1488-89 & n.382.

---

[2] *See* Nicola W. Palmieri, *Good Faith Disclosures Required During Precontractual Negotiations*, 24 Seton Hall L. Rev. 70, 78-79 (1993); D. Gordon Smith, *The Critical Resource Theory of Fiduciary Duty*, 55 Vand. L. Rev. 1399, 1489 (2002).

[3] "Fiduciary duty" has been characterized as a duty of "unselfishness." Larry E. Ribstein, *Fiduciary Duty Contracts in Unincorporated Firms*, 54 Wash. & Lee L. Rev. 537, 542 (1997).

[4] One court has noted that "[t]he rule of law that in commercial transactions the parties trade 'at arm's length' is venerable with age, but not fragrant with commercial honesty." *Marietta Fertilizer Co. v. Beckwith*, 61 S.E. 149, 149 (Ga. Ct. App. 1908).

The conduct of sophisticated parties engaged in commercial transactions is dictated by the "impersonal laws of the marketplace"[5] and the demands of "practical business exigency."[6] Parties engaged in a commercial transaction pursue their own self-interest and understand and expect that the parties with whom they are dealing are doing likewise. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d at 389; *Strongsville Bd. of Educ. v. Cuyahoga Cnty. Bd. of Revision*, 112 Ohio St. 3d 309, 2007-Ohio-6, 859 N.E.2d 540, at ¶ 13; 3 Dan B. Dobbs et al., *The Law of Torts* § 697 (2d ed. 2011); Agasha Mugasha, *Evolving Standards of Conduct (Fiduciary Duty, Good Faith and Reasonableness) and Commercial Certainty in Multi-Lender Contracts*, 45 Wayne L. Rev. 1789, 1824 (2000); Tory A. Weigand, *The Duty of Good Faith and Fair Dealing in Commercial Contracts in Massachusetts*, 88 Mass. L. Rev. 174, 184 (2004).

The courts should be cautious about imposing a set of morals on the commercial marketplace. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d at 399. Care must be taken to avoid overly broad applications of the implied duty of good faith and fair dealing that could "frustrate the policy interest in freedom of contract and undermine the parties' legitimate efforts to contractually determine their obligations." Sandra K. Miller, *Legal Realism, the LLC, and a Balanced Approach to the Implied Covenant of Good Faith and Fair Dealing*, 45 Wake Forest L. Rev. 729, 740 (2010). As the Honorable Michael D. Kirby, a former Justice of the High Court of Australia, has noted:

> The wellsprings of the conduct of commercial people are self-evidently important for the efficient operation of the economy. Their actions typically depend on self-interest and profit-making not conscience or fairness. In particular circumstances protection from unconscionable conduct will be entirely appropriate. But courts should, in my view, be wary lest they distort the relationships of substantial, well-advised corporations in commercial transactions by subjecting them to the overly tender consciences of judges."

*Austotel Pty Ltd. v. Franklins Selfserve Pty Ltd.*, (1989) 16 NSWLR 582, 585-86 (CA).

The scope of claims for breach of the implied duty of good faith and fair dealing should be defined in a way that avoids overly broad claims that could undermine the freedom of commercial parties to contract as they see fit. In this context, "good faith is best

---

[5] *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 389 (N.J. 2005).

[6] *Marietta Fertilizer Co. v. Beckwith*, 61 S.E. at 150.

understood as the absence of bad faith." Smith, 55 Vand. L. Rev. at 1489; *see Landry v. Spitz*, 925 A.2d 334, 342 (Conn. App. Ct. 2007); *Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1234 (Del. Ch. 2000). Construing the Uniform Commercial Code's "obligation of good faith,"[7] the Court of Appeals noted that "[g]ood faith imposes 'an honest intention to abstain from taking any unconscientious advantage of another, even through the forms and technicalities of the law.'" *Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 926 (Tenn. Ct. App. 1991) (quoting *Lane v. John Deere Co.*, 767 S.W.2d 138, 140 (Tenn. 1989)).

Bad faith has been defined in various ways. This Court has construed "bad faith" as "actions in knowing or reckless disregard of . . . contractual rights." *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 549-50 (Tenn. 1996). Several courts, addressing the scope of breach of the implied duty of good faith and fair dealing claims have held that a showing of "bad motive or intention" is a necessary element of the claim. *Kolbe v. BAC Home Loans Servicing, LP*, 695 F.3d 111, 123 (1st Cir. 2012) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d at 396); *Targus Grp. Int'l, Inc. v. Sherman*, 922 N.E.2d 841, 853 (Mass. App. Ct. 2010) (citation omitted) (stating that bad faith conduct implicates "a dishonest purpose, consciousness of wrong, or ill will in the nature of fraud"); *Limbert v. Mississippi Univ. for Women Alumnae Ass'n*, 998 So. 2d 993, 998 (Miss. 2008) (citation omitted) (stating that "'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity'").

Thus, in this context, "bad faith" is not simply bad judgment or negligence. *Borzillo v. Borzillo*, 612 A.2d 958, 961 (N.J. Super. Ct. Ch. Div. 1992). It involves a dishonest purpose. *Landry v. Spitz*, 925 A.2d at 342. In general, "[b]ad faith . . . implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Keller v. Beckenstein*, 979 A.2d 1055, 1063-64 (Conn. App. Ct. 2009). The Supreme Court of Montana has likewise held that the implied duty of good faith and fair dealing is breached "[w]hen one party uses discretion conferred by the contract to act [dishonestly] or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *Marshall v. State*, 830 P.2d 1250, 1251 (Mont. 1992).

Based on the evidence already obtained in discovery, there is little question that Dick Broadcasting Co., John W. Pirkle, and their related companies are knowledgeable and experienced actors in the commercial radio business. They were well represented when they negotiated and executed their contracts in 1997, and they were also well-represented two

---

[7]*See* Tenn. Code Ann. § 47-1-304 (Supp. 2012) (formerly codified at Tenn. Code Ann. § 47-1-203 (2001)).

years later when Dick Broadcasting negotiated and executed the agreement to sell its radio assets to Citadel Broadcasting Co.

The record also reflects that these parties were dealing at arm's length and that they were pursuing their own interests in their dealings with each other. Dick Broadcasting was seeking to maximize its financial advantage by negotiating sale of its radio assets to Citadel Broadcasting without advising or involving Mr. Pirkle. By the same token, Mr. Pirkle was pursuing his own self-interest when he contacted Citadel Communications directly after discovering that Dick Broadcasting had agreed to sell its radio assets to Citadel Communications.

Pursuing one's self-interest in a commercial transaction is not a breach of the implied duty of good faith and fair dealing. In order for a commercial actor's conduct to amount to such a breach, there must be evidence that it falls outside of the boundaries of acceptable commercial practice or it was motivated by a dishonest purpose, fraudulent intent, or ill will. The current record does not show that the actions of either party in this case fell outside the boundaries of acceptable commercial practice or that their actions were motivated by a dishonest purpose, a fraudulent intent, or ill will. Without such evidence, the best course will be "to let experienced commercial parties fend for themselves and [] not seek to 'introduce intolerable uncertainty into a carefully structured contractual relationship.'" *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d at 399 (quoting *Brick Plaza, Inc. v. Humble Oil & Ref. Co.*, 526 A.2d 1139, 1141 (N.J. Super. Ct. App. Div. 1987)).

_____
WILLIAM C. KOCH, JR., JUSTICE