IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 15, 2015 Session

## P. MICHAEL HUDDLESTON v. KENNETH L. HARPER ET AL.

**Appeal from the Circuit Court for Blount County**
**No. L-18329      David R. Duggan, Judge**

_____

### No. E2014-01174-COA-R3-CV-FILED-JUNE 30, 2015

_____

P. Michael Huddleston (Plaintiff) brought this action against his former business partner, Kenneth L. Harper, and also against Jerry L. Hurst, the person to whom Plaintiff sold his one-half interest in the partnership.  Plaintiff alleged that the primary asset of the partnership is a large building in Maryville, and that Defendants fraudulently concealed the fact that partnership had filed an insurance claim for damage to the building's roof.  The insurance claim was an asset that turned out to be worth over one million dollars.  The insurance company paid this amount to the partnership shortly after Plaintiff sold his interest.  Plaintiff claimed that Defendants fraudulently represented that the value of the building was about a million dollars less than its actual value because of the damage to the roof.  As a consequence, Plaintiff alleged that he was fraudulently induced to sell his one-half interest for substantially less than its actual value.  Plaintiff also alleged that partner Harper fraudulently endorsed Plaintiff's name to a check from the insurance company without his permission, and that the Defendants committed promissory fraud by inducing Plaintiff to endorse a second insurance check with the promise "to make things right with" him.  The trial court granted summary judgment to Defendants, finding that they "negated essential elements of the plaintiff's claims with respect to whether there was a failure to disclose or whether there [were] misrepresentations with respect to what was disclosed."  Finding genuine issues of material fact in dispute, we vacate the trial court's grant of summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

James S. MacDonald, Knoxville, Tennessee, for the appellant, P. Michael Huddleston.

1

Lewis S. Howard, Jr., Knoxville, Tennessee, for the appellees, Kenneth L. Harper and Jerry L. Hurst.

**OPINION**

I.

On October 1, 2003, Plaintiff and Harper formed a general partnership known as Harper-Huddleston Properties, or HH Properties. As contemplated by the partnership agreement, they acquired about ten acres of land, improved with a building of approximately 168,000 square feet (the HH building). According to Plaintiff, in 2008, Harper "assumed managing partner responsibilities for the HH Partnership." In June of 2011, the partners began discussing the possibility of Plaintiff selling his one-half interest to Hurst.

The value of the HH building had been appraised at between $3,300,000 and $3,600,000. Harper insisted that its actual value was significantly less because the roof had suffered significant hail damage and needed to be replaced at a cost of about one million dollars. In fact, without Plaintiff's knowledge, the partnership, through Harper, had submitted a claim with its insurance company for the damage to the roof. Defendants did not divulge this information to Plaintiff during the negotiations pertaining to the sale price of Plaintiff's interest. In an agreement executed on October 31, 2011, Plaintiff sold his one-half interest to Hurst for $1,250,000, which, according to Plaintiff, represented one-half of the estimated $2,500,000 value of the roof-damaged building. The assignment and sale agreement contained a "full release" provision stating, "Seller [*i.e.*, Plaintiff] hereby releases the Partnership and all partners . . . from all actions, claims, liabilities, obligations, litigation and other matters relating to or arising from the operation of the Partnership or the business of the Partnership." On November 10, 2011, the parties executed an "addendum to assignment and sale of partnership interest in Harper-Huddleston properties" that, in essence, gave Hurst more time to pay Plaintiff the remaining balance owed on the sale. The insurance claim was approved shortly after the sale of Plaintiff's interest, resulting in two payments to the partnership totaling $1,068,761.65.

The day after Plaintiff signed the addendum, Harper contacted him and asked whether he, Harper, could sign Plaintiff's name to an insurance check that named Plaintiff as one of the payees. Plaintiff told Harper, "Yea, I guess I'm okay with that unless you're talking thousands and thousands of dollars." The check, dated November 8, 2011, was in the amount of $566,662.38. Shortly thereafter, at Plaintiff's insistence, Harper told him the amount of the check. On December 2, 2011, Plaintiff learned that Harper had endorsed Plaintiff's name to the check.

A second insurance check in the amount of $502,999.27 followed, also with Plaintiff's name listed as a payee. According to Plaintiff, Defendants "beseeched" him to endorse the second check, promising "to make things right with" Plaintiff regarding the two insurance payments. Plaintiff agreed and endorsed the second check. He filed this action shortly after realizing that Defendants had no plans "to make things right."

Defendants filed a motion for summary judgment. Following a hearing, the trial court granted the motion, stating in pertinent part as follows:

> There was an assignment and sale agreement. It's not been rescinded. The plaintiff is not seeking to rescind it. It's been ratified and affirmed. The plaintiff and his wife have been released from business debt liability. His name was included on two checks which he endorsed or allowed someone to endorse, and even if, even if, and I'm not finding, but even if there were misrepresentations with respect to the first check as to the amount of the check, it couldn't – all he had to do was say show me the check instead of just saying, well, as long as we're talking a few thousand dollars. How is that a reasonable reliance on anything? He could have said show me the check; what's the amount of the check? If he chose to say fine, sign my name to a check, without further inquiry, he was perhaps careless. Where is there a reasonable reliance on anything that the defendant said? But they've established that his name was on two checks which he either endorsed from the insurance proceeds that he's complaining about . . . His name was on two insurance company checks which he either endorsed or allowed to be endorsed. If he didn't know all the details on the first check, the Court finds that he knew about the details by the time of the second check. He agreed on January 24, 2012 to endorse the insurance check upon Hurst's final payment. The payment was made. He did so endorse. All of the insurance proceeds have been paid to the roofing contractor.
>
> The Court finds that based upon all of those facts being established and that there being no genuine issue of material fact with respect to those facts, and also the finding that there are many things that the plaintiff could have done to protect himself if in fact he thought he was being defrauded,

3

including seeking to rescind the agreement, including. . . asking for monies to be paid into the court.

The Court believes that the defendants have negated essential elements of the plaintiff's claims with respect to whether there was a failure to disclose or whether there were misrepresentations with respect to what was disclosed. The Court believes that the defendants have negated essential elements of the plaintiff's claim for a fraudulent inducement by a conspiracy of silence, that there is no genuine issue of material fact, and I'm going to grant summary judgment to the defendants.

Plaintiff timely filed a notice of appeal.

## II.

Plaintiff raises the issue of whether the trial court correctly granted summary judgment to Defendants. Defendants argue that Plaintiff's appeal should be deemed frivolous.

## III.

Because the complaint was filed after July 1, 2011, Tenn. Code Ann. § 20-16-101 (Supp. 2014) applies to our analysis of summary judgment in this case. That statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

See also **Harris v. Metro. Dev. & Housing Agency**, No. M2013-01771-COA-R3-CV, 2014 WL 1713329 at *3 (Tenn. Ct. App. M.S., filed Apr. 28, 2014); **Wells Fargo Bank,**

*N.A. v. Lockett*, No. E2013-02186-COA-R3-CV, 2014 WL 1673745 at *2 (Tenn. Ct. App. E.S., filed Apr. 24, 2014).  As we observed in *Harris*:

> Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Tenn. R. Civ. P. 56.04.
>
> Summary judgments do not enjoy a presumption of correctness on appeal.  *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).  The resolution of a motion for summary judgment is a matter of law, thus, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008).  The appellate court makes a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied.  *Hunter v. Brown*, 955 S .W.2d 49, 50-51 (Tenn. 1977).

2014 WL 1713329 at *4.  In making this determination,

> [w]e must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd of Educ*., 2 S.W.3d 927, 929 (Tenn. 1999).  If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law.  See *White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

*Wells Fargo Bank,* 2014 WL 1673745 at *2.


IV.

The essence of Plaintiff's complaint states an action for fraud, now appropriately called intentional misrepresentation. In *Hodge v. Craig*, 382 S.W.3d 325, 342-43 (Tenn. 2012), the Supreme Court recently provided the following guidance:

> The law has never undertaken to precisely define fraud. The courts have long recognized that "fraud assumes many shapes, disguises and subterfuges," and that any effort to define fraudulent conduct would be futile.

> The ancient common-law action for deceit provided the vehicle for persons to seek recovery from those who intend to deceive others for their own benefit. The basis for finding legal responsibility for deceit centered on the defendant's intent to deceive, mislead, or convey a false impression.

> Throughout the centuries, the courts have had little difficulty finding the required intent to deceive when the evidence shows either that the defendant knows the statement is false or that the defendant made the statement "without any belief as to its truth, or with reckless disregard whether it be true or false." When a victim of deceit sought restitution, the courts customarily considered the inequity of allowing the defendant to retain what he or she obtained from the plaintiff. However, *in cases in which the deceit involved the transfer of something of value, the courts permitted the plaintiff to recover direct damages, along with special and consequential damages*.

> Our current common-law claim for intentional misrepresentation is the successor to the common-law action for deceit. *First Nat'l Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991). In fact, "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are different names for the same cause of action. In this opinion, we will refer to the cause of action as a claim for intentional misrepresentation, and, in order to avoid confusion, we suggest that this term should be used exclusively henceforth.

> To recover for intentional misrepresentation, a plaintiff must prove: (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when

6

it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

(Internal citations omitted; emphasis added)

We have also recognized that "fraud can be an intentional misrepresentation of a known, material fact or it can be the concealment or nondisclosure of a known fact when there is a duty to disclose." *Justice v. Anderson Cnty.*, 955 S.W.2d 613, 616 (Tenn. Ct. App. 1997). As a general principle, "[n]ondisclosure of a material fact may also give rise to a claim for fraudulent or negligent misrepresentation when the defendant has a duty to disclose and the matters not disclosed are material." *Id.*, citing *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992). In *Macon Cnty. Livestock Mkt., Inc. v. Kentucky State Bank, Inc.*, 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986), this Court observed:

> As a general rule, a party may be held liable for damages caused by his failure to disclose material facts to the same extent that a party may be liable for damages caused by fraudulent or negligent misrepresentations. W. Keeton, *Prosser and Keeton on The Law of Torts* § 106 (5th ed.1984); 37 Am.Jur.2d *Fraud and Deceit* § 146 (1968); and 37 C.J.S. *Fraud* § 16a. (1943). Thus, Restatement (Second) of Torts § 551(1)(1976) provides:
>
> > One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

7

Our courts have pointed out consistently that liability for nondisclosure can arise only in the cases where the person being held responsible had a duty to disclose the facts at issue. The Tennessee Supreme Court has held:

> In all cases, concealment or failure to disclose, becomes fraudulent only when it is the duty of a party having knowledge of the facts to discover them to the other party: 2 Pom. Eq., sec. 902. And this author, in the same section says: "All the instances in which the duty to disclose exists and in which a concealment is therefore fraudulent, may be reduced to three distinct classes:
> 1. Where there is a previous definite fiduciary relation between the parties.
> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.
> 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this last class." *Domestic Sewing Machine Co. v. Jackson*, 83 Tenn. 418, 424–25 (1885).

In this case, Plaintiff alleges in his complaint that "Harper violated the fiduciary duties of loyalty and care owed by one partner to another set out at T.C.A. § 61-1-404 (2013) and that Harper further violated his duties of good faith and fair dealing as to the Plaintiff." Tennessee adopted the Revised Uniform Partnership Act, Tenn. Code Ann. § 61-1-101 *et seq.*, in 2002. It provides in pertinent part as follows:

> (a) The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections (b) and (c).
>
> (b) A partner's duty of loyalty to the partnership and the other partners is limited to the following:
>
> (1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived

from a use by the partner of partnership property, including the appropriation of a partnership opportunity;

(2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and

(3) To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

(c) A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

(d) A partner shall discharge the duties to the partnership and the other partners under this act or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing.

Tenn. Code Ann. § 61-1-404. Tennessee courts have long recognized that "partners owe each other a fiduciary duty in all matters pertaining to the partnership." *Cude v. Couch*, 588 S.W.2d 554, 555 (Tenn. 1979); *American Ctr.-Nashville Ltd. v. Smith*, No. 01A01-9110-CH-00397, 1992 WL 361352 at *7 (Tenn. Ct. App. M.S., filed Dec. 9, 1992). Applying these authorities to the facts of this case, it is clear that Harper may be held liable to Plaintiff for concealment or nondisclosure of a material fact.

The factual framework for Plaintiff's claim is set forth at some length in his affidavit, which states in pertinent part as follows:

By Partnership Agreement dated as of October 1, 2003 the Plaintiff and the Defendant Kenneth L. Harper formed a Tennessee general partnership known as Harper-Huddleston Properties, sometimes also known as HH Properties. As contemplated in the Partnership Agreement, said partnership acquired the improved realty commonly known as 1713 Henry G. Lane, Maryville, TN consisting of approximately

9

ten acres and approximately 168,000 square feet of space under roof.

\* \* \*

In 2008 . . . Defendant Harper assumed managing partner responsibilities for the HH Partnership.

\* \* \*

In early June 2011, . . . preliminary discussions began between the Plaintiff and Harper with respect to Harper acquiring the Plaintiff's interest in the HH partnership. These discussions ultimately led to discussions by Harper concerning the Defendant Jerry Hurst acquiring Plaintiff's interest in the HH partnership rather than Harper. From the outset, however, and whether on behalf of himself or Hurst, the Defendant *Harper emphasized to Plaintiff that the approximately $1,000,000 cost needed to replace the roof on the HH building substantially reduced the value of the HH building, and hence the one-half value of the partnership that was to be purchased from Plaintiff.*

Despite the fact that the HH partnership had appraisals estimating the value of the property between $3,300,000 and $3,600,000, *due largely to Harper's insistence to Plaintiff that the needed $1,000,000 roof repair to the HH building substantially reduced its value*, Plaintiff ultimately agreed to sell his one-half interest in the HH partnership, the only significant asset of which was the HH building and acreage, to the Defendant Hurst for $1,250,00 (one-half of an estimated value of $2,500,000 for the HH building).

Plaintiff, however, remained a full partner, owning a 50% interest in the HH partnership until October 31, 2011, and . . . at no time prior to October 31, 2011 was Plaintiff made aware that the Defendants had filed an insurance claim for hail damage to the HH building roof that resulted in payments totaling $1,069,661.65[1] shortly after Plaintiff sold his interest

---

[1] Throughout his affidavit, Plaintiff states that the total amount of the insurance payments for the roof claim was $1,069,661.65. His complaint alleges that the total amount was $1,068,761.65, an amount

10

in the HH partnership to the Defendant Hurst. The Defendants were aware of the pending insurance claim for approximately two months prior to Plaintiff selling his interest to the Defendant Hurst, and yet nothing whatever was disclosed to Plaintiff concerning the insurance claim until after the first insurance check in the amount of $566,662.38 came in. . . . When Plaintiff finally heard of this very substantial and material positive change in the financial condition of the partnership, Plaintiff communicated to Harper [his] sense that he "had been used," to which Harper replied, for obvious reasons, "I was afraid you would feel that way...."[2] The Defendant Harper also admitted in an email dated January 3, 2012 to Plaintiff " . . . . I understand how you could feel betrayed as a partner . . . ."[3]

Plaintiff states that the continuing representations of the Defendants Harper and Hurst that the HH building was worth approximately $1,000,000 less than the appraised value due to the need for $1,000,000 worth of roof repairs were substantial, material and significant fraudulent inducements to him to accept approximately $535,000 less for his fifty percent, one-half interest in the Partnership.

\* \* \*

On November 11, 2011, the very day after the ADDENDUM [to the assignment and sale of partnership interest agreement] was signed on November 10, 2011, Plaintiff received an e-mail from the Defendant Ken Harper advising Plaintiff for the first time that Harper and Hurst had submitted an insurance claim for "some siding and roof repairs" and "just wanted to see if you [Plaintiff] are ok if I sign your name on any insurance checks that come in." Plaintiff promptly replied to Ken Harper on Friday, November 11, 2011 stating in part "Yea, I guess I'm okay with that unless you're talking thousands and thousands of dollars." More e-mails went back

---

admitted by Defendants' answer. This $900 discrepancy is not material to our analysis.

[2] Defendants allege that the full statement made by Harper was, "I was afraid you would feel that way, but in no way was this connived."

[3] Defendants argue in their brief that this quote from Harper's email omits "the remainder of such communication wherein Harper conveyed that no actual betrayal had occurred."

and forth between Plaintiff and Harper on Monday, November 14, 2011 and Tuesday, November 15, 2011 concerning the insurance check, culminating in Harper providing to Plaintiff a copy of the $566,662.38 insurance payment check as Plaintiff requested, upon receipt of which Plaintiff immediately replied to Harper "[expletive deleted]! Would have been nice to know about this before I sold 1/2 the bldg????  I feel a little used."

Despite the above-referenced express limitation "unless you're talking thousands and thousands of dollars" Plaintiff placed on his authorization for Mr. Harper to sign Plaintiff's name "on any insurance checks that come in," Plaintiff later learned on December 2, 2011 that without consulting Plaintiff, Defendant Harper had endorsed Plaintiff's name to the $566,662.38 check anyway.  Thereafter, the Defendants beseeched Plaintiff to endorse a second insurance company check, in the amount of $502,999.27, on the basis that Harper and Hurst desperately needed the money and promised "to make things right with you."  Specific discussions included various options including a promissory note in favor of Plaintiff secured by a deed of trust on the HH building.  The Defendants Harper and Hurst not only failed "to make it right," but instead ultimately told Plaintiff shortly before suit was instituted in this cause that they not only did not intend to make it right but in fact intended to do nothing about this $1,069,661.65 cash asset of the partnership . . . Plaintiff maintains that the Defendants Harper and Hurst fraudulently misrepresented their promises of future action "to make things right" without the present intention to carry out their promises.

Had Plaintiff been made aware of the pending insurance payment totaling $1,069,661.65, he would not have sold his fifty percent interest in the HH partnership to Hurst for $1,250,000 but instead would have insisted upon his rightful entitlement to one half of this added value to the building, or approximately $535,000, bringing his total payment for his fifty percent interest in the partnership to $1,785,000. Moreover, but for the Defendants' fraudulent inducements and promissory fraud "to make things right with you" in

regard to the $1,069,661.65 insurance proceeds, he would never have endorsed the second insurance company check in the amount of $502,999.27.

(Emphasis added; footnotes added; terms "the Affiant" and "Mr. Huddleston" in original replaced by "Plaintiff" in this quote for ease of reference; capitalization in original.)

In their answer, Defendants state:

Defendants admit the following: (a) Plaintiff remained a full partner, owning a 50% interest in the HH partnership until October 31, 2011; (b) Hurst acquired Plaintiff's 50% interest [in] the HH partnership; (c) the partnership received insurance funds totaling $1,068,761.65 after Plaintiff sold his interest in the HH partnership to Hurst; and (d) Defendants were aware of the pending insurance claim for approximately two months prior to Plaintiff selling his interest to Hurst and did not discuss such claim with Plaintiff.

Accepting the facts in Plaintiff's affidavit as true and considering the allegations in Defendants' answer that are favorable to Plaintiff, and drawing all reasonable inferences in his favor, as we must in a review of summary judgment, we are of the opinion that there are genuine issues of material fact in this case rendering summary judgment inappropriate. Plaintiff has presented evidence which, if believed by the trier of fact, establishes that Defendants failed to disclose an important and material fact – the existence of a potential asset of the partnership worth over a million dollars. Plaintiff's affidavit states that Defendants affirmatively represented that the value of the HH building was a million dollars less than it actually was because of damage to the roof. Arguably, this representation was not true because money from an external source – the insurance company – was going to be available to go toward the repair of the roof. Further, Plaintiff stated that "at no time prior to October 31, 2011" when he signed the assignment and sale of partnership interest agreement was he "made aware that the Defendants had filed an insurance claim for hail damage to the HH building roof." He has raised a reasonable inference of detrimental reliance by stating that he agreed to sell his one-half interest at a price reduced by the amount Defendants told him it would cost to repair the roof. Plaintiff's admissible statements in his affidavits create genuine issues of material fact regarding his claim for intentional misrepresentation.

The facts favorable to Plaintiff, if true, in addition to the assertion that Harper endorsed Plaintiff's name to the first insurance check without Plaintiff's permission, also support a finding of breach of the fiduciary duty owed by one partner to another, and of

13

the duty of good faith and fair dealing. *See* Tenn. Code Ann. § 61-1-404(d); *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013) ("there is implied *in every contract* a duty of good faith and fair dealing in its performance and enforcement") (emphasis in original).

> Full Release. By his execution hereof, Seller hereby releases
> the Partnership and all partners of the Partnership from all
> actions, claims, liabilities, obligations, litigation and other
> matters relating to or arising from the operation of the
> Partnership or the business of the Partnership.

Defendants rely upon the release in the sale agreement executed by the parties, which states in pertinent part:

(Underlining in original.) Over 80 years ago this Court observed that "[i]t is well settled that a release or discharge, the execution of which is procured by false and fraudulent representations, is voidable or void, and may be set aside at the instance of the party defrauded." *Crigger v. Mut. Ben. Health & Accident Ass'n*, 69 S.W.2d 907, 912 (Tenn. Ct. App. 1933); *see also Ewan v. Hardison Law Firm*, No. W2011-00763-COA-R3-CV, 2012 WL 1269148 at *8 (Tenn. Ct. App. W.S., filed Apr. 16, 2012) (vacating summary judgment based on release where "genuine issue of material fact existed as to the elements of fraud in the inducement of the Release"); *Evans v. Tillett Bros. Const. Co.*, 545 S.W.2d 8, 11 (Tenn. Ct. App. 1976) ("a release, the execution of which is procured by false and fraudulent representations is voidable or void, and may be set aside at the instance of the party defrauded. There is abundant authority to support the rule that a false representation as to one of several matters which is material and which enters into the consideration in procuring a settlement is sufficient to render a release void."). In light of facts in the record supporting Plaintiff's claim of intentional misrepresentation regarding the efficacy of the release, there is a genuine issue of material fact as to the validity of the release.

Neither the trial court, in its memorandum opinion and order, nor the Defendants, in their brief, have addressed Plaintiff's promissory fraud claim – that "but for the Defendants' fraudulent inducements and promissory fraud "to make things right with [him]" in regard to the $1,069,661.65 insurance proceeds, he would never have endorsed the second insurance company check." In *D'Alessandro v. Lake Developers, II, LLC*, No. E2011-01487-COA-R3-CV, 2012 WL 1900543 at *7 (Tenn. Ct. App. W.S., filed May 25, 2012), we stated:

> Unlike with negligent misrepresentation, a claim of
> promissory fraud in Tennessee may be based upon alleged

14

misrepresentations involving future events.  *See* **Kroger v. Legalbill.com**, 436 F.Supp.2d 97, 107 (D.D.C. 2006) (citing **Shahrdar v. Global Housing, Inc.**, 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998)) (footnote omitted).  The elements of the claim are as follows:

(1) an intentional misrepresentation of a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) an injury caused by reasonable reliance on the statement; and (4) a promise of future action with no present intent to perform.

**Hood Land Trust v. Hastings**, No. M2009–02625–COA–R3–CV, 2010 WL 3928647, at *7 (Tenn. Ct. App. Oct. 5, 2010) (quoting **Houghland v. Houghland**, No. M2005-01770-COA-R3-CV, 2006 WL 2080078, at *3 (Tenn. Ct. App. July 26, 2006)).  Thus, "[t]o show promissory fraud, plaintiff must prove that the alleged misrepresentation 'embod[ies] a promise of future action without the present intention to carry out the promise.' "  *Id*. (quoting **Stacks v. Saunders**, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).  "The promisor's intention must be shown to 'be false by evidence other than subsequent failure to keep the promise or subjective surmise or impression of promisee.' "  **Id.** (quoting **Biodynamic Techs., Inc. v. Chattanooga Corp.**, 658 F.Supp. 266, 268 (S.D. Fla. 1987) (applying Tennessee law); *see also* **American Cable Corp. v. ACI Mgmt., Inc.**, 2000 WL 1291265, at *5 (Tenn. Ct. App. Sept. 14, 2000) ("In the context of a promissory fraud claim, the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent.  The reason is that ordinarily, where nothing else is shown, mere failure to perform a promise can be as consistent with an honest intent as with a dishonest one.  Not every broken promise starts with a lie.") (internal citations omitted)).

In this case, Plaintiff has alleged that Defendants' promise "to make things right with you" regarding the insurance proceeds was dishonest and made with no intention to carry it out.  Plaintiff's affidavit states that the parties engaged in "[s]pecific discussions, [which] included various options including a promissory note in favor of Plaintiff secured by a deed of trust on the HH building," as a possible way to "make things right."  In the

context of promissory fraud, "[t]he question of intent is a question of fact for the finder of fact." ***Dog House Investments, LLC v. Teal Properties, Inc.***, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014); ***Styles v. Blackwood***, No. E2007-00416-COA-R3-CV, 2008 WL 5396804 at *7 (Tenn. Ct. App. E.S., filed Dec. 29, 2008) ("Whether the defendant has the present intent not to comply with a promise is a question of fact.") (quoting ***Noblin v. Christiansen***, No. M2005-01316-COA-R3-CV, 2007 WL 1574273 at *10 (Tenn. Ct. App. M.S., filed May 30, 2007)). Furthermore, "[w]hether a plaintiff's reliance on an alleged misrepresentation is reasonable is generally a question of fact, and thus, is generally not appropriate for summary judgment." ***Biancheri v. Johnson***, No. M2008-00599-COA-R3-CV, 2009 WL 723540 at *8 (Tenn. Ct. App. M.S., filed Mar. 18, 2009).

There are genuine issues of material fact in this case regarding whether Defendants committed promissory fraud and whether Plaintiff reasonably relied upon the allegedly dishonest promise. Plaintiff has presented proof from which a reasonable trier of fact could conclude that Defendants' promise "to make things right with you" was made with no intention of carrying it out. This proof includes Defendants' admission that they "were aware of the pending insurance claim for approximately two months prior to Plaintiff selling his interest to Hurst and did not discuss such claim with Plaintiff"; their alleged insistence that the HH building was worth one million dollars less than its actual value when they arguably knew that insurance money would be available to restore the roof to full value; Plaintiff's statement that Harper endorsed Plaintiff's name to the $566,662.38 insurance check despite having no authorization to do so; and Plaintiff's statement in his affidavit that "Defendants Harper and Hurst not only failed 'to make it right,' but instead ultimately told Plaintiff shortly before suit was instituted in this cause that they not only did not intend to make it right but in fact intended to do nothing about this $1,069,661.65 cash asset of the partnership."

In light of our disposition of this appeal, it is obvious that this appeal is not frivolous.

V.

The trial court's grant of summary judgment in Defendants' favor is vacated, and the case remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellees, Kenneth L. Harper and Jerry L. Hurst.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

16